(Decided 8th March, 1883.)

AUGUSTUS CRAWFORD, WILLIAM H. H. BIXLER and others *vs.* GEORGE F. ROHRER and others.

*Unpaid subscriptions to the Capital stock of a Corporation— Trust fund—Sham payments—Individual liability of Stockholders on their Unpaid subscriptions, to the Creditors of an Insolvent corporation—Equity jurisdiction.*

The unpaid subscriptions to the capital stock of a corporation constitute a trust fund for the benefit of the general creditors of the corporation; and this trust cannot be defeated, or the fund impaired by a simulated or pretended payment for the stock taken, nor by any device short of actual payment in good faith.

Any arrangement, therefore, among the stockholders, or those in charge of the affairs of the corporation, by which the stock is but nominally paid for, whether in money or property, the corporation not in fact getting the benefit of the price in good faith, will be regarded as a sham, and not as a valid payment, as against the

creditors of the corporation, however it may be regarded as between the corporation and the subscriber.

As between the creditors of the corporation and the original holders of the stock, it in no manner affects the rights of the former that the stock has been issued as fully paid up stock; for their rights depend not upon the mere appearance of things, but upon the actual *bona fide* payment by the stockholder, whether that payment be alleged to have been made in money or property.

A creditor may proceed in equity, upon an established or admitted claim, against a stockholder or stockholders, to enforce his or their liability to an insolvent corporation for the amount remaining due upon his or their subscription to the stock, although no account is asked to be taken of the other indebtedness of the company.

And it makes no difference in this respect that by the terms of the subscription as prescribed by the statute under which the corporation is formed, (Code, Art. 26, sec. 65,) the stock may be called in and demanded from the stockholders only "at such times and in such payments and instalments as the trustees, directors, or managers may deem proper." Such call by the trustees, directors, or managers, is only a step in the process of collection, and a Court of equity can pursue its own mode of collection, so that no injustice be done to the stockholder.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, and IRVING, J.

*Robert H. Smith,* and *John M. Carter,* for the appellants.

*Samuel Snowden,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

There is no dispute in regard to the existence of the debts upon which the bills were filed in these cases. They are admitted to be due by the corporation. The only question made in this Court is that of the liability

Crawford, Bixler, *et al. vs.* Rohrer, *et al.*

of the defendants as stockholders for such debts due from the corporation; that is to say, whether, under the provisions of the statute, there is any ground for holding them liable on account of the stock subscribed by them?

The Natural Guano and Chemical Company of Baltimore City was incorporated and organized, under the General Incorporation Law of the State, in May, 1880. The capital stock of the company was fixed at $20,000, divided into one thousand shares, of the par value of $20 each. The stock was subscribed for and allotted to the defendants, as follows: To Zell, 245 shares; to Burton, 245 shares; to Wetzler, 242 shares; to Rohrer, 243 shares; and 25 shares to Kendig; making, in all, the one thousand shares. These shareholders were made directors, and Burton was made president, Zell general manager, and Wetzler treasurer of the company. They carried on the operations of the company but for a brief period, before they suspended; and, at the instance of Wetzler and Rohrer, and upon the allegation that the company was totally insolvent, the Court appointed a receiver to take charge of and wind up the affairs of the concern. The defendants admit that the corporation is utterly insolvent; and they all, with the exception of Zell, aver and insist that the stock subscribed for by them has all been fully paid for, and that they hold the same as paid-up stock. But, however this may be, there is a strange confusion, and no little conflict, in the statements of the parties as to how payment was made.

It appears that two of the defendants, Zell and Burton, had been in business as partners, manufacturing fertilizers by some patent process; and they had a leasehold interest in the premises on which the business was conducted, and they had machinery, certain patent rights, and also a stock of crude materials on hand to be manufactured. After the formation of the corporation, instead of paying the par value in money for the stock that was issued to

them, they had valued and turned over to the corporation, the leasehold interest, the machinery, patent rights, and also the stock of raw materials, that belonged to them in their character of partners, composing the firm of Zell and Burton. According to the statement and contention of the defendants, Burton and Wetzler, the valuation, including everything, amounted to $16,000, and for which Zell and Burton were to receive stock; but, according to the averment in the separate answer of Zell, and also according to his testimony, the valuation of the property turned over only amounted to $14,000, and the sum of $1646.95 was the separate valuation of the stock of unmanufactured materials, for which the company actually paid, not in stock, but in money. And if this latter statement be true, even upon the assumption that the entire property was valued at $16,000, the full capital stock has not been in reality paid, but there is still due thereon the sum of $1646.95. Wetzler swears that the entire valuation of all the property turned over to the corporation was to be paid Zell and Burton in the stock of the company, and that the amount was $16,000; and that it was by an arrangement with them that he and Rohrer were equalized in the division and issue of the stock—he and Rohrer paying four thousand dollars in cash, to make up the $20,000, the full capital stock of the company. It is not claimed that they paid more than $4000, and that is less than half the par value of the stock issued to them. There is a doubt raised upon the testimony, whether more than $3000 were in fact paid by them, but that fact becomes immaterial to the present plaintiffs, if the other allegation be established, namely, that the $1646.95 were paid to Zell and Burton for the crude materials in money, and not in the stock of the company; for upon that assumption the payments for the whole one thousand shares of stock would be $14,353.05 in property and $4000 in money, leaving the balance of $1646.95 still due to capital stock.

Was, then, the unmanufactured materials taken from Zell and Burton paid for in cash and not in stock? This, as we have already said, is positively sworn to by Zell, and it has not been in any positive way controverted by Burton. The latter admits that the materials were separately valued at $1646.95, but he says he was not acquainted with that transaction; that it was settled and closed with Zell. He says, moreover, that Zell attended to all the business of Zell and Burton. Wetzler admits that the materials were separately valued, and further, that a very short time after the company was organized, Zell and Burton obtained from the company the amount of the valuation, $1646.95, with which to pay off their old debts. That the amount was paid to them without security; and that it was not regarded as a loan from nor a debt due to the company; but that it might be called a *gift* from the company to Zell and Burton.

But it seems to us that the evidence that is most reliable upon this subject is that furnished by the books of the corporation. Among the first entries that occur in the journal is the entry of the amount of the valuation of the raw materials as a credit to the capital stock; but that entry is afterwards corrected, and is, in a very explicit way, changed, with a memorandum to explain the act, into an entry to the credit of Zell and Burton, for the amount of the materials, and is carried through all the books as such credit to them. Wetzler says that this entry in favor of Zell and Burton was made without authority, but he does not and could not say that he was not aware of the fact of the existence of the corrected entry, and that it had been carried from the journal to the ledger. We cannot, therefore, do otherwise, under the circumstances, than conclude that such credit to Zell and Burton was made in accordance with the fact as it existed to the knowledge of all concerned. And that being so, it is clear, the stock has not all been fully paid up in the manner alleged by the defendants.

And hence it would seem to be clear, that the plaintiffs in these cases are entitled to be paid their undisputed claims to the extent that the stock subscribed for remains unpaid. This is required by the plain justice of the case, and is according to the terms of the statute (*Code, Art.* 26, *sec.* 59, as amended and re-enacted by the Act of 1872, *ch.* 325), which expressly provides, that all stockholders of any corporation shall be severally and individually liable to the creditors of such corporation to an amount equal to the amount of stock held by them, respectively, for debts and contracts made by the corporation, until the whole amount of the capital stock shall have been paid in; "but no stockholder shall be individually liable to the creditors of such corporation, except to the amount of his or their *unpaid* subscription to the capital stock." *Strauss vs. Heiss,* 48 *Md.,* 292. It has been again and again decided, that the unpaid subscriptions to the capital stock of a corporation constitute a trust fund for the benefit of the general creditors of the corporation; and that this trust cannot be defeated or the fund impaired by a simulated or pretended payment for the stock taken, nor by any device short of actual payment in good faith. Any arrangement, therefore, among the stockholders, or those in charge of the affairs of the corporation, by which the stock is but nominally paid for, whether in money or property, the corporation not in fact getting the benefit of the price in good faith, will be regarded as a sham, and not as a valid payment, as against the creditors of the corporation, however it may be regarded as between the corporation and the subscriber. *Sawyer vs. Hoag, Assignee,* 17 *Wall.,* 610; *Rider vs. Morrison, et al., Receivers,* 54 *Md.,* 429. As between the creditors of the corporation and the original holders of the stock, as is the case here, it in no manner affects the rights of the former that the stock has been issued as fully paid-up stock; for their rights depend not upon the mere appearance of things, but upon the actual

*bona fide* payment by the stockholder, whether that payment be alleged to have been made in money or property.

The defendants, by their answer, deny the jurisdiction of the Court as a Court of equity, to take cognizance of the case, and insist that the remedy is alone in a Court of law. But that position is clearly not maintainable, and is against the most express and authoritative decisions. *Norris vs. Johnson,* 34 *Md.,* 489. It is well settled that a creditor may proceed in equity, upon an established or admitted claim, against a stockholder or stockholders, to enforce his or their liability to an insolvent corporation, for the amount remaining due upon his or their subscription to the stock, although no account is asked to be taken of the other indebtedness of the company. And it makes no difference in this respect, that by the terms of the subscription, as prescribed by the statute, under which the corporation is formed (*Code, Art.* 26, *sec.* 65), the stock may be called in and demanded from the stockholders only "at such times and in such payments and instalments as the trustees, directors or managers may deem proper." Such call by the trustees, directors or managers, is only a step in the process of collection, and a Court of equity can pursue its own mode of collection, so that no injustice be done to the stockholder. *Hatch vs. Dana,* 101 *U. S.,* 205.

It is quite clear, upon the evidence before us, that the stock subscribed for by Zell and Burton has been fully paid up, and therefore the bills were properly dismissed as to them; but the stock subscribed for by Wetzler and Rohrer, and by Kendig as to 15 shares, has not been fully paid for; and there should be an account to ascertain the proportions in which those parties should contribute to the payment of the claims of the plaintiffs against the corporation,—such contribution not to exceed the amount still due and unpaid by them on their stock, and for which they are severally and individually liable.

Crawford, Bixler, *et al. vs.* Rohrer, *et al.*

The decree appealed from will be affirmed, so far as the same dismisses the bills as against Zell and Burton; but it must be reversed as to the other defendants, and the cause will be remanded for further proceedings.

*Decree affirmed in part, and
reversed in part, and
cause remanded.*

(Decided 8th March, 1883.)