## BRUNSWICK TERMINAL COMPANY *v.* NATIONAL BANK OF BALTIMORE.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 88. Argued December 9, 10, 1903.—Decided February 23, 1904.

The additional liability of the shareholders of corporations depends on the terms of the statute creating it, and as such a statute is in derogation of the common law it cannot be extended beyond the words used.

Where the charter of a state bank provides for additional liability of the shareholders as sureties to the creditors of the bank for all contracts and debts to the extent of their stock therein, at the par value thereof, at the time the debt was created, a shareholder is not liable for a debt created after he has actually parted with his stock and the transfer has been regularly entered on the books of the bank.

Where the decisions of the highest court of a State show that it regarded the construction and application of a statute as open for review if another case arose, its prior determinations of the questions do not necessarily have to be adopted and applied by the Federal courts in cases where the cause of action arose prior to any of the adjudications by the state court.

Section 1496 of the Georgia Code of 1882, requiring shareholders of banks to publish notice of transfer in order to exempt themselves from

liability, does not apply to shareholders who have transferred their stock prior to the inception of the debts at the time of the failure of the institution.

THIS was a bill filed January 14, 1898, in the Circuit Court of the United States for the District of Maryland by the Brunswick Terminal Company and others, creditors of the Brunswick State Bank, chartered by the State of Georgia, which failed and was declared insolvent in May, 1893, to enforce, in behalf of its creditors, against the National Bank of Baltimore, a statutory liability equal to the par value of certain shares of stock in the State Bank at one time standing in the name of the Baltimore Bank.

The case was first heard on demurrer to a plea of the Maryland statute of limitations. The demurrer was overruled, the defence sustained, and the bill dismissed. 88 Fed. Rep. 607. On appeal to the Circuit Court of Appeals for the Fourth Circuit, the decree was reversed and the cause remanded for further proceedings. 99 Fed. Rep. 635.

The cause was then heard on the pleadings, and an agreed statement of facts, the parties reserving the right to refer to any pertinent laws or statutes of Georgia, as follows:

"That the Brunswick State Bank was a corporation chartered, organized and existing under the laws of the State of Georgia, and was engaged in the general banking business in that State; that on or about the 30th day of May, 1893, William M. Wiggins and others, alleging themselves to be creditors of said Brunswick State Bank, filed their petition in the Superior Court of Glynn County, Georgia, against said bank, alleging that it was insolvent, and praying for the appointment of a receiver to take possession of its assets, and administer them, and on the 29th day of June following the court decreed that the bank was insolvent and appointed a permanent receiver for the purposes stated; that the State of Georgia and Glynn County were, under the laws of Georgia, preferred creditors, and the assets obtained by the receiver as the assets of the bank were exhausted by the payment of these preferred claims

and the costs of litigation, and nothing was left for the payment of other creditors of the bank; that the following persons are creditors of the said Brunswick State Bank in the amounts stated in connection with their names, and were originally parties plaintiff in said cause, or having become such subsequently, that is to say: [Here follow lists of creditors.]

"That the defendant is a national bank, chartered, organized and conducting a business of a bank at the city of Baltimore, in the State of Maryland, under the provisions of the statutes of the United States in relation to national banks and their operation.

"That in the month of August, 1890, the defendant discounted for one Lloyd a promissory note drawn by him and F. E. Cunningham for the sum of ten thousand dollars-- ($10,000.00), endorsed by the copartnership firm of Lloyd & Adams, and by W. A. Cunningham, and received, together with the note, as the collateral security for its payment, one hundred and ten (110) shares of the capital stock of said Brunswick State Bank of the par value of one hundred dollars ($100.00) per share; that, in order to protect itself as pledgee, the defendant caused this stock to be transferred into its own name on the books of the Brunswick State Bank, on or about the 25th day of August, 1890; that the said note was paid to the defendant at the time of its maturity, and the defendant being under obligation to return the stock, the pledge being at an end and the pledgor entitled to its return, retransferred the stock on the books of said Brunswick State Bank by direction of the pledgor, and the said transfer was fully completed on the books of the said bank on or before the 20th day of October, 1890, but no notice by publication of the fact of said retransfer was given by the defendant; that the defendant never had or claimed any interest in said stock, save under the pledge aforesaid, but never notified the Brunswick State Bank, its stockholders or creditors, that it held said stock otherwise than as the absolute owner thereof.

"That the indebtedness of said Brunswick State Bank to

all of the plaintiffs in this cause accrued after the said 20th day of October, 1890, from transactions with said bank commenced after that date, and the plaintiffs had no knowledge in fact that the name of the defendant had appeared upon the books of said Brunswick State Bank as a stockholder.

"It is agreed that the court may draw inferences from any of the foregoing facts to the same extent as if the facts had been proven by means of witnesses."

The Circuit Court rendered a decree dismissing the bill. 112 Fed. Rep. 812.

An appeal to the Circuit Court of Appeals was taken and that court certified to this court certain questions concerning which it desired instructions for the proper decision of the case. After full argument on the merits this court required the whole record and cause to be sent up for consideration.

*Mr. Henry W. Williams* and *Mr. C. P. Goodyear,* with whom *Mr. W. E. Kay, Mr. H. Winslow Williams* and *Mr. William S. Thomas* were on the brief, for appellants.

*Mr. William L. Marbury,* and *Mr. Frank Gosnell,* with whom *Mr. Allan McLane* was on the brief, for appellee.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The Baltimore Bank was a national bank, and was not authorized to permanently invest any portion of its capital in the stock of other corporations, nor did it attempt to do so in this instance. The shares of stock of the Brunswick Bank were merely accepted as collateral to a note discounted by the Baltimore Bank. They stood, it is true, for a few weeks in the name of the Baltimore Bank on the registry of the Brunswick Bank, but they were then retransferred to the pledgor as appeared on the registry, the note having been paid. Complainants became creditors long after the transaction, and were chargeable with notice so far as the Baltimore Bank was con-

cerned. But notwithstanding the latter bank only held the shares as collateral and had returned the pledge in due course on the payment of the loan, the contention is that the bank is under a statutory liability to these subsequent creditors, to the full amount of the shares it had temporarily held as security.

This additional liability of a stockholder depends on the terms of the statute creating it, and as it is in derogation of the common law the statute cannot be extended beyond the words used.

As to stockholders of the Brunswick Bank, such a liability was imposed by the ninth section of the charter, granted in 1889, which provided "that said corporation shall be responsible to its creditors to the extent of its property and assets, and the stockholders, in addition thereto, shall be individually liable equally and ratably, and not one for another, as sureties to the creditors of such corporation, for all contracts and debts of said corporation, to the extent of the amount of their stock therein, at the par value thereof, respectively, at the time the debt was created in addition to the amount invested in such shares."

Tested by the language of this section, the Baltimore Bank was never under liability to these creditors. For if this national bank could have been regarded as the owner of these shares from August 25 to October 20, 1890, notwithstanding the actual facts and the limitations on its powers, it was not such stockholder, in fact or in appearance, at the time complainants' debts were created. It acquired the stock as pledgee, August 25, 1890, and the note to which it was collateral having been paid, retransferred it October 20, 1890, the retransfer being regularly entered on the books of the bank. It was after this that the transactions commenced from which the indebtedness to complainants arose, and no element of estoppel was involved.

Nevertheless complainants contend that the Baltimore Bank remained liable as a stockholder because it did not give notice of the retransfer under section 1496 of the Georgia Code of 1882, reading as follows:

"When a stockholder in any bank or other corporation is individually liable under the charter, and shall transfer his stock, he shall be exempt from such liability, unless he receives a written notice from a creditor within six months after such transfer, of his intention to hold him liable; *provided*, he shall give notice once a month, for six months, of such transfer, immediately thereafter, in two newspapers in or nearest the place where such institution shall keep its principal office."

This section was obviously not intended to impose a liability but to exempt from an existing liability. If any debt had been created from August 25 to October 20, and perhaps as to any debt outstanding on August 25, the Baltimore Bank, treating it as a stockholder from August 25 to October 20, might have been held liable because it did not give the statutory notice, but no such case is presented. On the face of this record it is immaterial whether there were any creditors during the six months after the retransfer to give or to receive notice or whether there was any indebtedness incurred prior to August 25, or during the period from August 25 to October 20, 1890.

We concur in the views of the Circuit Court, as thus expressed by Morris, J.:

"As by the charter of the Brunswick State Bank a stockholder was only liable as surety to creditors to the extent of his stock in the bank at the time the debt was created, and as the defendant at the time the debts of the plaintiffs were created had no stock in the bank, and was therefore under no liability, it does not appear that section 1496 of the Georgia code could have any application to this defendant. This section is applicable to a stockholder who, being individually liable to a creditor or creditors, shall then transfer his stock. The stockholders in the Brunswick State Bank were only liable for debts created while they held their stock, and, as applied to them, this section means that a stockholder who has become individually liable to a creditor by holding stock at the time the creditor's debts were created shall be exempt

from such liability, provided he publishes a notice that he has transferred his stock, unless within six months after the transfer the creditor gives him notice that he intends to hold him liable. This would seem to be the plain meaning and intention of the statute.

"As section 1496 enables a stockholder, who, by the charter, is already under liability to a creditor, to escape that liability by transferring his stock, unless the creditor gives him notice within six months after the transfer, it is sensible and understandable why notice of the transfer should be given; but, as to persons who as yet had no dealings with the bank out of which debts could be created, to require notice to them would not be sensible, and would be a mere arbitrary penalty, without reason,—a thing which is not to be imputed to the legislature if the section is capable of a more reasonable interpretation. If no notice of transfer by advertisement is given by the stockholder, then no notice within six months need be given by the creditor, and b^th stand upon the right given by the charter, unaffected by section 1496 of the code."

But it is said that the highest judicial tribunal of Georgia has decided otherwise, and that the Circuit Court and this court are bound to accept its interpretation of these statutory provisions. Without discussing the exceptions to that rule the inquiry in the first instance is as to what has been actually decided by the Supreme Court of Georgia in respect of the construction and application of those provisions in circumstances such as exist in this case. We are referred to the cases of *Brobston* v. *Downing, Brobston* v. *Chatham Bank,* 95 Georgia, 505, decided May Term, 1894; and *Chatham Bank* v. *Brobston,* 99 Georgia, 801, decided December Term, 1895, which involved the charter of the Brunswick State Bank.

The court delivered no opinion in *Brobston* v. *Downing,* and *Chatham Bank,* but the first headnote by Bleckley, C. J., was in these words: "With or without a clause in the charter restricting the personal statutory liability of stockholders to the

amount of stock at its par value at the time the debt in question was created, the liability exists and continues for any debt incurred by the corporation at any time until the stockholder who claims to be exempt by reason of having sold and transferred his stock before the debt was created has given notice of such sale conformably to section 1496 of the code. Lumpkin, J., concurring *dubitante.*"

This does not in terms refer to stock which has been held as collateral and retransferred on payment of the loan.

In the second case there was no opinion of the court, but the following headnotes appear:

"1. The decisions of this court in the cases of *Brobston* v. *Downing*, and *vice versa*, and *Brobston* v. *Chatham Bank*, 95 Ga. 505, upon a review thereof, are affirmed.

"2. Where the charter of a bank imposes on all of its stockholders personal liability to its creditors, such liability attaches as well to those who acquire a complete legal title to stock of the bank by having the same transferred to them as collateral security for debts due by the transferers, as to those who purchase such stock outright.

"3. Under the charter of the Brunswick State Bank, and the general rules of law applicable thereto, a stockholder is individually liable for his *pro rata* part of the corporation debts created before he acquired his shares of stock by transfer, as well as for a like part of those created during his ownership of the shares.

"4. A stockholder in that bank is also liable to the same extent upon debts of the corporation created after he transferred his shares, unless he gave notice of the transfer, as prescribed in section 1496 of the code."

These were followed by four other headnotes, which need not be set forth.

Of the three members of the court, Mr. Justice Lumpkin and Gober, J., filed an explanatory opinion, in which, after giving the ninth section of the Brunswick Bank charter, and section 1496 of the Code of 1882, they stated:

"In the case of *Brobston & Co. et al.* v. *Downing,* and *Same* v. *The Chatham Bank,* 95 Georgia, 505, this court in effect decided that a stockholder in this bank was individually liable for his *pro rata* part of the debts of the corporation created before he became a stockholder, as well as for a like proportion of the indebtedness incurred by it while he held his stock. This decision controls the present cases. Upon a review of it, duly allowed, Chief Justice Simmons and Justice Lumpkin are of the opinion that it should be affirmed; and Judge Gober, being thus bound by it, of necessity concurs in the judgments now rendered. He is nevertheless of the opinion that in dealing with the cases reported in 95 Georgia, *supra,* the court, in so far as it held that a stockholder of this bank could be made liable for any debt created by it before he actually became a stockholder, misconstrued that portion of the bank's charter which is quoted above. If free to do so, he would hold that, under the language just referred to, the individual liability of a stockholder of this corporation is limited to such debts only as were contracted during the time he was an owner of stock and up to the date when, relatively to such liability, he legally severed his connection with the corporation. We all agree that any such owner, although he may have transferred his stock, would still be bound, under the above cited section of the code, for whatever liability the charter fixed upon him, unless he gave the notice provided for by that section.

"In 1894, an act was passed by the general assembly which materially modifies the law bearing upon this subject, in that it dispenses with any necessity for a stockholder, upon transferring his stock, to publish notice of the fact in order to be discharged from liability. That act declares that 'whenever a stockholder in any bank or other corporation is individually liable under the charter, and shall transfer his stock, he shall be exempt from such liability by such transfer, unless such bank or other corporation shall fail within six months from the date of such transfer.' Act of 1894, p. 76; Civil Code,

§ 1888.[1]  In view of the radical change thus made in the law, the difference of opinion which exists between the majority and the minority of the court as constituted for the hearing of the cases now in hand is, apparently, of but little practical importance, save as affecting the result of the present litigation.  If another case should arise the decision of which would depend upon the question as to which we disagree, the whole matter would still be open to review by a bench of six justices. Accordingly, we have agreed among ourselves to let the present decision stand upon the headnotes as announced, with the foregoing explanation of our reasons for not entering upon a discussion as to what should be the proper construction of the bank charter now under consideration."

As the reference was to the increase of the number of justices from three to six, which followed soon after, we think this explanation indicated that it was contemplated that "the whole matter would be open for review," before the new bench, if another case arose.  The power to reëxamine would exist, and these remarks were evidently intended to suggest that in the circumstances it might be properly exercised.  And this, although the point of disagreement was confined to the question whether liability attached in respect of indebtedness created

---

[1] Sections I, II and VI of the act of 1894 are as follows:

SEC. I. *Be it enacted by the General Assembly of the State of Georgia, etc.,* That from and after the passage of this Act, whenever a stockholder in any bank or other corporation is individually liable under the charter, and shall transfer his stock, he shall be exempt from such liability by such transfer, unless such bank or other corporation shall fail within six months from the date of such transfer.

SEC. II. *Be it further enacted,* That the stockholders in whose name the capital stock stands upon the books of such bank or other corporation at the date of its failure shall be primarily liable to respond upon such individual liability; but upon proof made that any of said shareholders at the date of the failure are insolvent, recourse may be had against the person or persons from whom such insolvent shareholder received his stock, if within a period of six months prior to the date of the failure of such bank or other corporation.

SEC. VI. *Be it further enacted,* That all laws and parts of laws in conflict with this law be, and the same are, hereby repealed.

before the particular stockholders sought to be charged became such.

We conclude, therefore, that the questions before us have not been so definitely determined by the state court as to entitle such determination to be adopted and applied in this case. And this conclusion is confirmed by other considerations. The foregoing decisions were rendered in 1894 and 1895, and the Baltimore Bank was not a party to the litigation and was never within the jurisdiction of the Georgia courts. The transaction with this bank occurred in 1890, and fully terminated October 20 of that year.

When it took the collateral shares in its own name, it seems to us that it had the right to assume that it ran no risk of incurring liability by virtue of the terms of the charter of the Brunswick Bank for indebtedness created after, in the ordinary course of business, it ceased to hold the stock, and that it could not reasonably have supposed that section 1496 of the code of Georgia was intended arbitrarily to make all, who might have held the stock of the Brunswick Bank from time to time, liable for every transaction during twenty years (the period of limitations), after they had ceased to be stockholders.

There had been no such ruling in respect of the statutory liability imposed by the charter of the Brunswick Bank on its stockholders, when the loan was made and paid, and the cases cited from the Georgia reports prior to 1894, all of which we have carefully examined, dealt with different provisions and involved different considerations.

The charter of the Brunswick Bank was granted in 1889, at which time section 1496 had been in force for many years, and its application could only extend to the liability imposed by the charter, namely, liability for indebtedness created while the relation of stockholder existed. The words "at the time the debt was created," must be held to have been providently inserted as words of limitation, and cannot be rejected, nor rendered inefficacious by the prior law, which only applied to the actual situation, and did not control it nor purport to do so.

The question is not whether all stockholders remained. such if notice were not published, but whether the liability as stockholders, as to subsequent transactions, continued in spite of the termination of that relation, and that question is answered by the explicit terms of the ninth section of the charter.

*Decree affirmed.*