JAMES J. ALLENDER ET AL. *v.* JOHN J. GHINGHER, RECEIVER.
ETHEL H. GERWIG ET. AL. *v.* JOHN J. GHINGHER, RECEIVER.
[Nos. 19, 20, January Term, 1936.]

158

*Decided February 19th, 1936.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Jerome A. Loughran* and *James Clark,* with whom was *John Wood,* on the brief, for the appellants.

*John S. Newman* and *Parsons Newman,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Since these appeals present identical questions of law, they may be conveniently considered together. Broadly stated, their solution depends upon (a) whether or not a receiver can maintain a suit in equity against stockholders of a banking institution of this state to enforce their statutory liability under section 72 of article 11 of the Code, the assessment being one hundred per cent. of the par value of the stock held by them; and (b) if such suit is sustainable in equity, whether it is permissible to divide the stockholders into various groups, and at different times bring separate suits against them for the enforcement of such liability.

Appellee, Ghingher, by decree of the Circuit Court for Frederick County, in equity, was appointed to succeed George W. Page as receiver of Central Trust Company of Maryland for the purpose of liquidating its assets in accordance with section 9, article 11 of the Code (as amended by Laws 1933, ch. 529, sec. 1). A petition having previously been filed by the former receiver, showing the necessity of collecting from the stockholders their full statutory liability in order to meet the obligations of the insolvent institution, the equity court passed an order authorizing him to proceed to enforce such liability by suit, either at law or in equity, and in such jurisdictions as he might be advised. Thereafter, in pursuance of such authority, the present receiver filed two separate suits in the Circuit Court for Frederick County, in equity, against certain stockholders of the trust company to enforce such statutory liability, having, at the time of filing each, obtained authority from the equity court to file the same in the form of separate suits. In the first of these (No. 19 on this record) the defendants consist of ninety-five stockholders of the trust company, while the second suit (No. 20) was filed against sixty-five stockholders of the same company. In each of the suits the addresses of the defendant stockholders are given, and while a number of them are residents of Frederick County, some reside in Howard County, others are residents of Carroll County, still others reside in Montgomery County, while the remainder have residences in Washington County. Demurrers to each bill were filed by appellants, all of whom resided beyond the confines of Frederick County, and in each case the principal reason assigned in support of them was that the plaintiff had an adequate and complete remedy at law, and the equity court for Frederick County was, therefore, without jurisdiction. By overruling these demurrers, the chancellors below rejected appellants' contentions, and in effect ruled that the jurisdictional question thus raised by them was without merit. From such orders, these appeals are taken.

Obviously, at the outset, it is necessary to consider the statute under which such liability arises and is here sought to be enforced (chapter 219, section 68, Acts of 1910, now section 72 of article 11 of the Code), concerning which the following observation was made by Judge Offutt, speaking for this court, in *Robinson v. Hospelhorn,* 169 Md. 117, 131, 179 A. 515, 521: "The cases in which the nature of such a liability have been considered have necessarily turned upon the language of particular statutes which the courts were called upon to construe. The liability is wholly statutory, its definition must be found in the words of the statute creating it, and there is no room for the application of general principles, or of precedents except those which deal with this particular statute or with others substantially similar to it, although where its language is ambiguous the ordinary canons of statutory construction may be invoked to aid in its interpretation. *Morse on Banking,* sec. 675. It is in derogation of the common law and its meaning cannot be extended beyond the words used. *Id.,* n. 3, 4; *Brunswick Terminal Co. v. National Bank,* 192 U. S. 386, 24 S. Ct. 314, 48 L. Ed. 491."

Moreover, in the recent case of *Ghingher v. Bachtell,* 169 Md. 678, 182 A. 558, Judge Mitchell, in a well-considered opinion, reviewed all legislative enactments leading up to the passage of this particular statute, and reached the conclusion that it was passed in amplification of the Constitution, and when invoked, attached to those holding stock at the time of such invocation; that an absolute contract between the stockholders and the bank arose from the constitutional provision. It was there said:

"By virtue of this coalescence of statutes, the receiver of a bank, for the first time, was empowered to enforce the liability of its stockholders, collecting their contribution to the common fund, from which he would make distribution to the bank's creditors.

"In view of the inauguration of this new system of liability enforcement, involving a change in the theories

of recovery and a corresponding modification of the rules of evidence, the cases which had been decided during the existence of the old practice were no longer controlling."

This act (section 72, article 11), to which these quotations from the cited opinions have reference, is for all practical purposes so nearly identical with section 63, title 12, U. S. Code Ann. (the National Banking Act) as to leave no reasonable doubt that in its enactment the language of the former act was adopted, and it may be inferred that it was done for producing uniformity in liability of the two classes of stockholders. In the absence of any construction of such statute by this court, decisions of the federal courts, construing it over a period of many years, are entitled to great weight, and should be given effect unless they contravene some established policy of the State. *Robinson v. Hospelhorn, supra.*

From a consideration of the adjudicated cases under the federal act, of which section 72 of article 11 is the counterpart, these principles have been definitely established:

The liability of the stockholders is several and not joint; and where the assessment is for less than the full amount of such liability the suit may be either at law or in equity, but when the order or assessment is for the full amount of the par value of the stock, the suit against the stockholders must be at law, unless there are special facts existing requiring the interposition of a court of equity. *Kennedy v. Gibson* (Md. 1869) 8 Wall. 498, 19 L. Ed. 476; *Bundy v. Cocke* (Ky. 1888) 128 U. S. 185, 9 S. Ct. 242, 32 L. Ed. 396; *Stanton v. Wilkeson* (Dist. Ct. N. Y. 1876) 8 Ben. 357, 22 Fed. Cas. page 1074, No. 13,299; *Young v. Wempe,* (Circ. Ct. Cal. 1891) 46 Fed. 354; *Bailey v. Tillinghast* (Ohio 1900) 99 Fed. 801, 40 C. C. A. 93, affirming (Circ. Ct. 1897) 86 Fed. 46; *Parker v. Robinson* (Mass. 1895) 71 Fed. 256, 18 C. C. A. 36; *Casey v. Galli* (1876) 94 U. S. 673, 24 L. Ed. 168; *Zimmerman v. Carpenter* (Circ. Ct. S. D. 1898) 84 Fed. 747; *Rankin v. Miller* (Dist. Ct. Del. 1913) 207 Fed. 602; *Bailey v. Sawyer* (Circ. Ct. Minn. 1877) Fed. Cas. No.

744; *Hale v. Allinson*, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380. See, also, 3 *R. C. L.* 415; 7 *C. J.* 512; *United States v. Knox*, 102 U. S. 422, 26 L. Ed. 216; *Studebaker v. Perry*, 184 U. S. 258, 22 S. Ct. 463, 466, 46 L. Ed. 528.

We quote from the opinion in the case last cited: "These observations clearly imply that the Comptroller, in the exercise of his discretion, may levy successive assessments as they may appear to be necessary. If the power can be exercised only once no reason is apparent why equity should have jurisdiction for the collection of an assessment less than one hundred per cent. If the stockholders' liability is fixed once for all by the first assessment of the Comptroller, the legal remedy for the collection of a ten per cent assessment is as full, adequate, and complete as it is for the collection of the one hundred per cent assessment. The reason why, when the assessment is for one hundred per cent, the proceedings must be at law, and when for a less amount it may be in equity, is obvious. When the full amount is assessed there can be but one suit against each stockholder. He is suable for his full liability at once, and there is no reason for equitable jurisdiction. If a partial assessment is made, there may be other assessments, when the receiver has liberty to sue at law for even a partial assessment, though equity has concurrent jurisdiction to prevent a multiplicity of suits."

Concerning the construction thus placed upon the statute, Mr. France, in his work on *Corporation Law* (2nd Ed.), observes: "The decisions of the Supreme Court on the statutes have, as a whole, displayed practical good sense; and they have worked out a method which is simple, economical and efficient. The result is that in many states the older methods have been superseded by legislation substantially like that governing national banks."

It will be further observed that, according to these authorities, a distinction is made in the method of enforcement according as the proceedings are taken to recover the full statutory liability of the stockholder or less

than this amount, since in the latter situation the case may stand over for further action of the court, should the same be necessary, until the full amount of the liability has been enforced; that in the situation last described there exists the right of contribution between the stockholders. This, it seems to the court, is a sufficient reason, in cases where the assessment is less than one hundred per cent, to justify a resort to equity.

This principle was early recognized by this court, for in *Matthews v. Albert* (1866) 24 Md. 527, 538, it is said: "The proceeding here, however, is in equity where the liability of the several defendants may be ascertained, and enforced with respect to each other, and when each of them may insist upon contribution from the others." This was followed by the decision in *Norris v. Johnson,* 34 Md. 485, a case which has since been referred to as authority for enforcing the liability of a stockholder in equity, notwithstanding the only question there decided was that such an action could be maintained at law. We have been referred to no case decided by this court, in which the doctrine announced in *Matthews v. Albert, supra,* has been repudiated. An analysis of the cases since *Norris v. Johnson, supra,* including *Crawford v. Rohrer,* 59 Md. 599; *Hall v. Hughes,* 119 Md. 487, 87 A. 387; *Goldstein v. Leitch,* 142 Md. 184, 187, 120 A. 369; *Wright v. Lewis,* 149 Md. 71, 130 A. 911, and *Id.,* 161 Md. 674, 158 A. 704; and *Robinson v. Hospelhorn, supra,* has convinced us that they cannot be considered as authority for the abstract proposition that a stockholder's liability under the statute here being considered is enforceable in equity, because in none of them was the jurisdiction of the equity court to enforce such liability challenged, and therefore the point was not directed to the court's attention. Not only was the court's right to pass upon such question undenied and unconsidered, but some of the cases presented equitable problems for which a court of law was wholly inadequate, while others dealt merely with the right to sue at law.

In view of these considerations, the court has not felt

at liberty to construe the decisions mentioned as having the force of binding precedents in upholding suits of this nature in equity, when the remedy at law is adequate and complete. *Robinson v. Hospelhorn, supra.*

Appellee also bases his right to maintain these suits in equity upon two additional grounds, viz.: (1) That the relief here sought is ancillary or auxilliary to that obtaining in the original proceeding, and since the equity court there acquired jurisdiction over the assets of the trust company, this will be retained for the purpose of deciding all questions in controversy; and (2) under the doctrine of prevention of a multiplicity of suits.

The first of these contentions seems sufficiently answered by the receiver's own conduct in filing two suits, entirely separate and independent of each other and also separate from the original proceeding, to say nothing as to how many other separate suits he intends to bring, such acts conclusively showing that he has not sought the aid of such original jurisdiction. Moreover, if his position is sound, there is no logical reason why he may not sue in equity in Frederick County, in a separate proceeding, every stockholder of the Central Trust Company, notwithstanding he admits that many of the defendants in these suits reside in four other counties. But, in addition to this objection, other considerations to be hereafter discussed suggest themselves.

The answer to the second contention lies in the fact that the statute, apart from the federal decisions, expressly negatives the idea of a joint liability, but plainly states it to be single and entirely disassociated from the liability of any other stockholder. In discussing the doctrine of prevention of multiplicity of suits, Mr. Pomeroy, in his work on *Equity Jurisprudence* (4th Ed.) vol. 1, at page 409, states that to justify its invocation some common relation, interest, or question must exist, and that such a suit must result in the simplification or consolidation of the issues. He concludes that if, after numerous parties are joined, there remain separate issues to be tried between them and the single plaintiff or defendant,

nothing has been gained by assuming jurisdiction in equity. See, also, the same work, section 251½ (2), from which we quote: "A bill was filed to collect the amounts previously assessed against the stockholders of a corporation under a statute making them severally and individually liable for its debts to an amount equal to the value of their respective shares. While an inquiry to determine how large the assessment should be should properly be made in equity, 'after the rate of assessment has been fixed, and the individual liability of each stockholder has thus been ascertained, the enforcement of such liability is the proper subject of a suit at law, in which the separate rights of the defendant stockholders are distinctly to be considered.' "

This doctrine was expressly approved by the court in *Hale v. Allinson* (C. C.) 102 Fed. 790, affirmed in (C. C. A.) 106 Fed. 258, and later affirmed in 188 U. S. 56, 23 S. Ct. 244, 253, 47 L. Ed. 380, where it is said: "The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except there is a common plaintiff who has similar claims against many persons. But as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his codefendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability." *Pomeroy's Equity Jurisprudence* (4th Ed.) vol. 1, secs, 243 to 257; *Story's Equity Jurisprudence* (14th Ed.), secs. 112 and 113, and cases there cited.

And even though equity could be considered the proper

fórum, it does not follow that appellants are compelled to defend the suits beyond the county of their residence, thus depriving them of the right of trial at home where they live and are known, which in turn makes the proceedings more costly to them. See 67 *C. J.*, p. 97, title "*Venue*," where it is said that the general rule requiring actions to be brought in the county of defendant's residence is applicable to suits and cross-bills in equity, unless the proceedings fall within a statutory exception. It is there further stated: "The privilege conferred on a defendant of being sued in the county of his domicile is a valuable and substantial right which is not to be denied upon a strained or doubtful construction of a statutory exception or except in strict compliance with the law on clear and convincing proof, and all doubts are to be resolved in its favor."

These authorities seem especially applicable to the present cases, in one of which, under this doctrine, the receiver elects to bring in ninety-five stockholders and in another sixty-five, each case being separate and distinct from the other and in no way connected with the original suit. It is obvious that in neither case is any defendant concerned in the least with the defense of his codefendants. The liability of each defendant being several, each is entitled to have his case tried without having it affected or prejudiced by consolidation with that of others, with whom he has no interest or contractual relation, with whose defenses he is not concerned, and for whose costs and expenses he should not be held liable, since for the liability of his codefendants he has neither responsibility nor interest.

The fact that the stockholder's liability is an asset of the corporation, enforceable by the receiver, does not *per se* make the claim one which is cognizable in equity, for concededly promissory notes and overdrafts of the institution which have come into the receiver's hands are likewise assets of the corporation, with the collection of which he is chargeable, but would it be contended that he could, by instituting a single suit, in equity, enforce their

collection? This would prevent a multiplicity of suits, yet, as observed by Pomeroy, *supra*, the defendants would have no community of interest, and their liability would be several. Likewise in these cases the decree against each of appellants would separate him from all other defendants and would be against him *in personam* for the amount of his liability and his costs, and execution or attachment upon such decree would be against him alone and upon his own property. These considerations seem a sufficient test in distinguishing between a legal and equitable remedy, and in such cases the convenience to the receiver acting under a court of equity is not to be weighed against the right of the individual.

Nor is this conclusion affected by the decision in *Bartlett v. Smith*, 162 Md. 478, 485, 160 A. 440, 161 A. 509, since the majority opinion in that case dealt solely with the right of the plaintiff to sue at law, and sustained such right because the pleadings eliminated the question of contribution. That decision may, therefore, be regarded as a recognition of the doctrine stated in *Matthews v. Albert* and the federal cases which, as we have seen, are in complete harmony therewith. Moreover, there exists in these cases no common liability binding the defendants together, so as to make section 91 of article 16 applicable.

Other grounds suggest themselves in favor of the legal rather than an equitable remedy in these cases, principal among which is the right of the individual to have a trial by jury in cases involving issues of fact in civil proceedings. Maryland Constitution, art 15, sec. 6; Article 5, Declaration of Rights. Concerning this right, Mr. Justice Story, in *Parsons v. Bedford*, 3 Pet. 433, 446, 7 L.Ed. 732, 736, said: "The trial by jury is justly dear to the American people."

While it was held in *Capron v. Devries*, 83 Md. 220, 224, 34 A. 251, that this constitutional provision had no reference to trial of an issue of fact in a court of equity, and the Legislature had power to enlarge the jurisdiction of equity, and sometimes such jurisdiction has been enlarged by the effect of judicial decisions, these consid-

erations are not controlling in the present cases, since we have seen there is neither statute nor judicial decision in this state to support a right to proceed in equity and thus deprive the individual of the right to a trial of issues of fact by a jury. There being, then, an absence both of valid legislative enactment and judicial decisions abridging the right, it remains in favor of the individual.

For these reasons, it follows that in these cases there exist no problems of a nature requiring a resort to equity, and, the remedy of the receiver for the enforcement of the stockholder's liability being adequate at law, there was error in the passage of the orders overruling the demurrers, and the same must be reversed.

> *Orders overruling demurrers in Nos. 19 and 20 reversed, with costs to appellants in each case.*

BOND, C. J., filed a dissenting opinion as follows:

Ninety-five stockholders are made defendants to this first bill, sixty-five to the second, and nearly as many suits at law would be necessary to enforce in that jurisdiction the liability of all of them, suing jointly those who hold stock jointly. With the insolvency of their corporation, and the deficiency to be made up by these stockholders, determined in the receivership proceeding, there would be, as it seems to me, no material differences in questions remaining to be settled in the suits at law, if, indeed, there would be any questions. The books of the corporation determine who are stockholders. *Kerr v. Urie*, 86 Md. 72, 78, 37 A. 789. It is suggested that some may have defenses on the ground of fraud in inducing their subscriptions to stock, but those possible cases must be rare, too rare to determine the general rule of jurisdiction. And there would be no difficulty in litigating such defenses in a single equity suit for enforcement. Such a single suit is the established statutory method for enforcing liabilities of stockholders in other corporations, whatever the questions may be, and was that estab-

lished for collecting the amount of the additional, or double, liability from trust company stockholders from 1904 to 1910. Acts 1904, ch. 337; Acts 1910, ch. 219, sec. 68; Code, art. 23, secs. 147 and 148, art. 11, sec. 72. Under the present statute, no jurisdiction for suing the latter is specified. It is provided that the liability "shall be enforceable only by appropriate proceedings by a receiver," etc. But may it not reasonably be contended that proceedings in equity, which after long experience have been so made by statute the exclusive proceedings for enforcement of similar liabilities, must be appropriate proceedings for the enforcement of this one? It is conceded that if one additional matter of fact, such as the amount of a proportionate contribution by each stockholder, should need to be litigated, all that is sought to be litigated now could appropriately and justly be litigated in this single equity proceeding. On the other hand, the useless and vexatious waste involved in resort to the great number of suits necessary at law must so clog performance of the receiver's duties as to amount to a practical deterrent, and render the statute hardly workable. So long as the statute is on the books, it is the office of the courts to provide appropriate procedure to make it work. But if the law requires splitting the proceedings into so many suits, with so little to be accomplished by it, then, however logically the law may be functioning, it is not functioning well. I do not think the law requires it.

The question is finally one of taking sides in the unfinished debate on the sufficiency of avoidance of a multiplicity of lawsuits as a sole ground of equity jurisdiction. And it is a question of importance beyond the decision of this case. *Pomeroy, Equity Jurisprudence* (4th Ed.) secs. 255 to 271, and 2333; 45 *Harvard Law Rev.* 1297 etc.; 24 *Yale Law Journ.* 642.

In an equity case under a similar statute on liability directly to creditors for the amounts of unpaid subscriptions, Act of 1872, ch. 325, now embodied with amendments in section 77 of article 23 of the Code, a statute which specified no forum for enforcement, Judge Alvey,

for the court, said: "It is well settled that a creditor may proceed in equity, upon an established or admitted claim, against a stockholder or stockholders, to enforce his or their liability to an insolvent corporation, for the amount remaining due upon his or their subscription to the stock, although no account is asked to be taken of the other indebtedness of the company." *Crawford v. Rohrer,* 59 Md. 599, 605. And in *Hall v. Hughes,* 119 Md. 487, 492, 87 A. 387, 389, also in equity, Chief Judge Boyd said: "The statutes in force from time to time in this State making stockholders liable for unpaid stock were primarily intended to protect creditors, and before the passage of chapter 305 of the Acts of 1908 any creditor could sue at law or in equity any stockholder * * * and recover from him to the extent of the balance due on his stock subscription—not exceeding, of course, the amount of the debt due the creditor." In these expressions the court seems to have viewed such a suit as cognizable in equity without joinder of creditors and stockholders for equitable adjustments among them. Equity jurisdiction was not rested on the theory that the amounts required of the stockholders constituted trust funds for the benefit of creditors, and there would be no more trust in them than in the additional amounts required under the double liability statute. See *Coulbourn Bros. v. Boulton,* 100 Md. 350, 355, 59 A. 711. Authority was found in two earlier decisions on enforcement of the liability for unpaid subscriptions under the statute imposing it. The cases of *Wright v. Lewis,* 149 Md. 71, 130 A. 911, and *Id.,* 161 Md. 674, 158 A. 704, too, were brought in equity to enforce payment of unpaid amounts of stock subscriptions under the same statute (Code, art. 23, sec. 77), which, like the one now sought to be enforced, did not designate the jurisdiction. Finally, this court in *Bartlett v. Smith,* 162 Md. 478, 485, 160 A. 440, 442, 161 A. 509, said that "A plaintiff may proceed in equity to avoid multiplicity of suits where equity would otherwise not have jurisdicton, but he is not obliged to."

In *Matthews v. Albert,* 24 Md. 527, in equity, the court

remarked upon the advantages of equity procedure in adjusting relative rights among creditors and stockholders, and, as Judge Miller said in the next succeeding case on the subject, "was careful not to decide against the remedy at law." In the latter case, *Norris v. Johnson*, 34 Md. 485, the court decided that suit at law might be brought by a creditor, and Judge Miller, for the court, said further: "The sole question we are now called upon to decide is, can this liability be enforced by one creditor, where others are shown to exist, * * * or must the creditor resort to equity for relief? It is to be observed that this section [of the Act of 1852, chapter 338, imposing a double liability on stockholders in manufacturing companies], unlike in that respect similar laws in some of the States, is silent as to remedy, prescribing no form, and designating no tribunal where relief may be had. In such case, it is unanimously conceded the creditors may have relief in equity, but the controverted question is, have they not also the right to sue at law."

The unanimous concession was, presumably, found in decisions in other states, rendered from near the beginning of the last century, when provisions in general statutes or special charters were enacted to retain more or less of the liability for debts which incorporators would have had if in business as partners. Some of those decisions held that the alternative of numerous suits at law furnished in itself a ground for resorting to equity. *Bank of Poughkeepsie v. Ibbotson*, 24 Wend. (N. Y.) 473, 479, cited by this court in *Norris v. Johnson*, 34 Md. 485, 490; *Penniman v. Briggs*, 1 Hopk. Ch. (N. Y.) 300, 305; *Adkins v. Thornton*, 19 Ga. 325, 328; and see *Angell & Ames, Corporations*, sec. 626. Other decisions are not clear on the point. But it seems to me it may fairly be concluded that the principle resulting from those decisions generally was that a creditors' bill, by or on behalf of all creditors, against all stockholders, was permitted and approved because it facilitated adjustments on each side, but that single creditors could pursue a stockholder at law.

If in the earlier Maryland decisions the court contemplated that equity would have jurisdiction only for the purpose of adjusting the relative rights, the fact appears to have been lost sight of in the later decisions quoted. And my understanding is that since 1910 suits on the double liability of trust company stockholders or bank stockholders have been brought in equity, and that, besides those in the two cases before the court at this term, others are now pending in the lower courts. And counsel have stated to the court here that the quoted expressions of the court appearing to sanction the course have been relied on.

These statements of the law, furnishing guides to trial courts and attorneys, should not be abandoned unless there should be some serious disadvantage in following them. There seems to me to be a serious disadvantage in following the alternative practice, especially since the numbers of stockholders in corporations have increased so greatly, as is evidenced here. This increase presents the problem as a modern one. If the expressions quoted from our earlier cases were departures from accepted principle, the fact would seem to be unimportant, for an improvement in procedure which has gained a footing in actual practice is one we may accept, even though originating in a departure. *Nelson v. Chesapeake Const. Co.*, 159 Md. 20, 24, 149 A. 442. My view is that we should deny the principle supposed to have been departed from, and hold with the authorities that find the necessity of numerous suits for enforcement at law to be a sufficient ground in itself for resort to equity, in the absence of substantial differences in the issues which would make a suit in equity multifarious. Upon that theory, the present suit would be maintainable, and the decree should be affirmed.

In *Gray v. Citizens' Gas Co.*, 206 Pa. 303, 55 A. 988, the Supreme Court of Pennsylvania said: "It may be conceded that the time is not very remote in our judicial history when a wronged party sought the intervention of equity, and he could be truthfully met by the reply, 'You

have a remedy at law in an action of damages,' such reply would have been the end of his bill; he would have been turned out of court for want of jurisdiction. But this answer is no longer conclusive as to the jurisdiction. Courts now go further, and inquire whether, under the facts, the remedy at law is not vexatiously inconvenient, and whether it is so proximately certain as to be adequate to right the wrong complained of." And in the same court, in a suit in equity on unpaid stock subscriptions by an assignee of a corporation for the benefit of its creditors, Mitchell, C. J., after repeating the extract just quoted, said: "Testing by this standard the numerous actions that would be required at law, and comparing that remedy with the superior certainty, uniformity, and convenience of the present bill, we have no hesitation in holding that it is a proper case for equitable jurisdiction." *Cook v. Carpenter,* 212 Pa. 165, 61 A. 799, 801. "The avoidance of multiplicity of suits by every device, which is jurisdictionally possible and practically convenient," said Wooley, J., in *Munson Lines v. Insurance Co.* (D. C.) 36 F. (2nd) 269, 271, "should be encouraged, and should be one of the main objectives of procedural administration, and of decisions by courts in practice cases." And see, generally, 45 *Harvard Law Rev.* 1297 etc.; 24 *Yale Law Jour.,* 642; and *Pomeroy, Equity Jurispr.* (4th Ed.) secs. 255 to 271, and 2333.