| JOSHUA HITCH, vs. SAMUEL FENBY. | December Term, 1850. |

[BILL OF REVIEW—PRACTICE—USURY.]

A BILL of review for new facts or newly discovered facts, must aver that such facts came to the knowledge of the complainant within nine months prior to the filing of his bill.

Between the same parties, and for the same matters, a new original bill cannot be brought after a decree has been made in a cause and enrolled, unless it was obtained by fraud.

A decree was passed in 1841 for the sale of certain mortgaged property to pay a balance claimed in the bill to be due on the mortgage debt, which sum was admitted by the answer of the defendants *under oath* to be due. Seven years afterwards, the defendants filed their bill *to open this* decree upon the ground that it was passed in pursuance of an agreement as a mere security for any balance that might be found due on settlement of their mutual dealings, and then charging usury and other objections against complainant's claim. HELD—

1st. That after such lapse of time, it would require a very strong and clear case to justify the interference of the court to prevent the alleged fraudulent and oppressive use of this decree.

2d. Not having set up the defence of usury at the time the decree was passed, although he was well aware of the facts upon which the charge is based, and having offered no satisfactory excuse why he did not take the defence then, he cannot be allowed now to open the decree to let in this defence.

Prior to the act of 1845, ch. 352, the plea of usury by the mortgagor or his

alienee to a bill of foreclosure by the mortgagee would have been a full and complete defence.

If a defendant, having the means of defence in his power in an action against him at law, omits to use them and suffers a recovery against him, he is precluded from asking relief in chancery in relation to the same matter.

In equity as at law, parties are required to use due and reasonable diligence, and they will not be permitted to unsay at a future time what they have not only once said, but sworn to.

Upon a supplemental bill, in the nature of a bill of review, the question always is, not what the plaintiff knew, but what, using due diligence, he might have known.

[The bill in this case was filed on the 1st of January, 1848, and its allegations, together with those of the answer, and all the proceedings and facts in the case are sufficiently stated in the opinion of the Chancellor.]

THE CHANCELLOR:

This bill cannot be supported either as a bill of review for error apparent on the face of the decree sought to be affected by it, or upon the ground of new facts, or facts discovered since the decree, and which could not, with reasonable diligence, have been used at the time when the decree passed. There is no pretence of error apparent upon the face of the decree nor of discovery of facts since its date which could not have been used by way of defence at that time. And even if these objections could be surmounted and a bill of review would lie for new facts or newly discovered facts without asking the previous consent of the court, a fatal difficulty would still exist in the fact that the present bill was filed seven years after the date of the decree sought to be revised, without any allegation or suggestion even that the new or subsequently discovered facts came to the knowledge of the complainant within the period of nine months prior to the exhibition of his bill. On the contrary, nothing appears upon the face of this bill to show that every ground relied upon was not fully known to the complainant when the decree of January, 1841, was passed.

The case of *Burch et al* vs. *Scott*, 1 *G. and J.*, 393, and *Berrett* vs. *Oliver*, 7 *G. and J.*, 192, are conclusive to show that

a bill of review upon either of the grounds stated cannot be maintained. This bill, then, if it can be maintained at all, must be considered as an original bill in the nature of a bill of review, impeaching the decree upon the ground of fraud, or as a bill asking the court to interfere to prevent its decree from being made the instrument of oppression and injustice. As between the same parties and for the same matters a new original bill cannot be brought after a decree has been made in a cause, and has been enrolled, unless it was obtained by fraud. 3 *Daniel's Ch. Pr.*, 1724.

The bill in the case in which the decree passed, and which decree the present bill seeks to open, was filed on the 16th of January, 1841. It alleges that William Hitch and Joshua Hitch had executed to the complainant there, (who is the defendant here,) two bills of sale of personal property, the one dated the 17th of May, 1838, and the other the 18th of November, 1840, to secure the payment of a large sum of money due from the grantors ; that a portion of the property embraced in the conveyances having been sold, and the proceeds applied to the payment in part of the debt, there remained due at the time a balance of $7580, and the prayer was that the property should be sold for the payment of that balance with interest and costs.

To this bill the defendants, Joshua and William Hitch, filed their answer upon oath, being also signed by both of them as well as by counsel, in which they admit the identical sum claimed in the bill to be due from them, and submit to a decree as prayed.

The answer does not simply admit in general terms that the facts stated in the bill are true, but it admits that the sum due from them on account of said bills of sale to the complainant is $7580 up to the 6th of January, 1841, as in said bill is expressed.

And two days afterwards, that is, on the 18th of January, 1841, a decree passed for the sale of the property appointing the complainant, Fenby, a trustee for the purpose, and directing a credit to be given for all sums above one hundred dollars. Subsequently, on the 15th and 29th of September, 1842, upon petitions filed by the complainant, and with the consent of the

defendants, orders were passed by the Chancellor, altering, to some extent, the terms and the mode in which the property was to be sold.

Now, the allegation in the present bill is, that the bills of sale and proceedings in chancery were designed by the said parties thereto, and in pursuance of a mutual agreement to that effect, as a security merely to the said Fenby for the repayment of any balance that might be found due to him on a settlement to be made of their mutual dealings, and after this allegation it charges usury and makes various other objections to the claims of Fenby, and seeks to open and vacate the enrolment of the decree for the purpose of an account to be taken between the parties.

The bill, therefore, is not, strictly speaking, an original bill, in the nature of a bill of review, impeaching the decree for fraud because it does not allege that it was obtained by fraud, nor could such allegation be made in the face of the complainant's answer to the original bill, verified by affidavit, but the ground taken is, that the decree, which was obtained for one purpose, is now about to be perverted to another purpose, in fraud of the complainant to this bill.

Conceding that the court at this distance of time would interfere to prevent the fraudulent and oppressive use of a decree to purposes not contemplated by the parties and in conflict with their agreement, (and it certainly would require a very strong and clear case to justify such interference after an interval of seven years,) the question is, whether the complainant has by evidence made out any such case as that charged in his bill?

The substance of the allegation is, that the decree was not given to secure a specific and ascertained sum of money, but merely by way of securing the repayment of any balance that might be found due Fenby on a settlement of accounts. And this allegation is denied by the answer, which says, that at the time stated in this bill he filed his bill in this court for a foreclosure of said bills of sale truly stating the amount then due him to be $7580. That there was no fraud, deceit or surprise practiced in obtaining the decree, but that on the contrary, it was for money, all of which was justly due him, and was made

16*

up of moneys actually before then advanced to the said Joshua and William Hitch by this respondent, and of debts they owed positively assumed by this respondent, and subsequently paid by him.

It clearly appears, then, if this answer is true, that the decree was not taken simply to secure an unascertained balance, but for a specific sum then actually due, and for other sums assumed by Fenby for the two Hitches as their surety, which other sums he has since paid.

The question is, not whether the decree of 1841 was obtained by fraud, for it is not pretended that it was so obtained, but whether it is now about to be used for a fraudulent and oppressive purpose, and in the consideration of this question, it is immaterial whether any portion of the amount for which the decree was taken was for money then actually advanced or subsequently advanced. For it is clear there would be no fraud or oppression in using the decree to compel the repayment of money for which Fenby was liable as surety, which the decree designed to secure, and which he has since in fact paid.

But the issue in fact made by the bill and answer in the case is, whether the decree of 1841 was given for an arbitrary sum, being intended merely to secure the balance which, upon an adjustment of accounts, should be found due Fenby, or for an ascertained balance then due and to become due as the assumed liabilities should be paid by him. If the parties agreed that the liabilities assumed by Fenby for the Messrs. Hitch should be added to the amount due him for advances then actually made and included in the decree, there could be no objection to it, nor any unfairness in using the decree to compel repayment if those liabilities have since in fact been paid by Fenby.

The bill in this case alleges that the decree was not given for any such ascertained amount, but as a security for such balance as might upon settlement be found due Fenby. This averment of the bill is met by a denial in the answer, and as I read the evidence, there is not sufficient proof to countervail this denial. Indeed, looking to the answer of the two Hitches in 1841, in which upon their oaths they distinctly admit the very sum for

which the decree passed to be due, and I should most reluctantly permit myself to be influenced, by any evidence they could offer, to believe the contrary.

It is not to be tolerated that parties shall make admissions, and fortify those admissions by the highest of all earthly sanctions, and then be allowed to say that they did not mean that which their language confirmed by the most sacred obligation, to speak the truth, plainly imports.

The argument has been pressed that the proceedings which led to the decree of 1841, and the decree itself, are entitled to less consideration than otherwise they would be, because they all appear to be in the handwriting of the same solicitor. It is true they do appear to be so, but it is equally true that the answer of Joshua and William Hitch is signed by themselves in proper person, and also by another solicitor of this court. And when to this evidence of perfect fairness in the conduct of the cause is added the fact that all the admissions of the answer are sanctified by the solemn oath of the defendants there, it surely would require a weight of evidence infinitely stronger than has been produced here to lead to the conclusion that nothing admitted was true, and that all these proceedings are but a solemn mockery. I have read the evidence carefully, and can find nothing in it to shake the conviction which the answer of 1841 is so well calculated to make, that there was then an ascertained sum due Fenby, consisting partly of advances, &c. then made, and of liabilities which he had assumed for these complainants, and which he afterwards paid.

There are, moreover, other circumstances to be found in the proceedings in the original cause, subsequent to the decree of January, 1841, strongly in opposition to the theory of the present bill, that that decree was not for an ascertained sum, but was only intended as a security for such balance as might be found to be due Fenby upon an adjustment of their dealings thereafter to be made.

It appears, as has been shown, that after the decree was passed, to wit: on the 15th and 29th of September, 1842, petitions were filed by the complainant, Fenby, asking for a mod-

ification of the terms and the manner in which the mortgaged property was directed to be sold, and that with the consent of the defendants, Joshua and William Hitch, the terms and mode of sale were changed accordingly. Now, if the ground taken by this complainant is the true one, and the decree of the 18th of January, 1841, was only designed as a security for such sum as might afterwards be found due Fenby, why should the complainant in the succeeding year have applied to the court for an alteration of the terms so as to facilitate the sale, and why, above all, should the Messrs. Hitch, by their answer in writing, have given their consent to such modification? The position now assumed is, that the decree of 1841, was a mere security for an unascertained balance; that it was not to be executed until there should be an adjustment of accounts between the parties; that no such adjustment has been made, and that when the account of Fenby is purged of the usurious charges contained in it, and other objectionable and unfounded items, the entire amount claimed by him will be extinguished. But how can this pretension be reconciled with the fact that within less than two years from the date of the decree, these parties are found concurring in an application to the court to change the terms and mode of sale so as to facilitate its execution? It appears to me, to be no very easy task to reconcile the proceedings referred to with the position now taken by the complainant in this cause, and I am clearly of opinion, he has not succeeded in maintaining the issue in fact presented by the pleadings.

Assuming then, as I do, that the complainant has failed in showing that the decree was taken as security merely for an unliquidated balance, and that he has moreover failed in proving that it is about to be used for a fraudulent or oppressive purpose, there would seem to be no ground upon which he can ask the interposition of this court to open the decree and send the parties to the Auditor for an account.

It is said, however, that conceding the complainant has not succeeded in establishing these grounds, he is yet entitled to have the decree of 1841 opened, and the amount reduced by striking from the claim of Fenby, the usurious interest with which it is alleged he charged Joshua and William Hitch.

In considering this ground of equity, it must be remembered, that the complainant in this bill does not intimate any where that he was not as well aware of the facts upon which the allegation of usury is based in 1841, when he consented to the decree, as he is now, and no satisfactory reason is given why he did not make the defence then. He says, to be sure, that the decree then confessed was only designed as a security for some floating balance of accounts, but this ground I have already shown is untenable in point of fact, and, therefore, as I conceive, the complainant is without sufficient excuse for not only failing then to rely upon this defence, but for actually, under oath, admitting that he owed the sum claimed in the bill, and consenting to the decree.

There can of course be no doubt whatever, that prior to the act of 1845, ch. 352, the plea of usury by the mortgagor, or his alienee to a bill of foreclosure by the mortgagee, would have been a full and complete defence. *Trumbo* vs. *Blizzard & Jacobs*, 6 *G. & J.*, 18. Having omitted to make this defence at the proper time, and having, on the contrary, admitted the claim and consented to the decree, the question is, shall he, seven years afterwards, be allowed to open the decree upon this ground, and institute an examination into a matter which, by the decree, was supposed to be finally settled. There can be no doubt that a judgment at law, under such circumstances, would not be disturbed. If a defendant having the means of defence in his power in an action against him at law, omits to use them, and suffers a recovery to be had against him, he is precluded from asking relief in chancery in relation to the same matter. *Gott & Wilson* vs. *Carr*, 6 *G. & J.*, 309. This is the undoubted rule in regard to judgments at law, and I can conceive of no reason why the decree of this court should be dealt with in a different way. Why should parties be permitted to come into this court, and not only omit in due time to present their defence, but admit they have no defence to claims made against them, and then years afterwards be allowed to say that these omissions and confessions amount to nothing, and that at the very time they were made there were grounds of defence upon

which they could, if they would, have successfully relied ? Such, I am persuaded, is not the law of this court, but that here, as at law, parties are required to use due and reasonable diligence, and especially they shall not be permitted to unsay at a future time what they have not only once said, but sworn to. Respectable authority can be found for the principle that a bill of review cannot be brought against a decree taken by consent for *consensus tollit errorem.* 3 *Daniel's Ch. Pr.*, 1726. As observed by Chief Justice Savage, 1 *Hopkins*, 105, "upon a supplemental bill, in the nature of a bill of review, the question always is, not what the plaintiff knew, but what, using due diligence, he might have known." And, in this observation he is sustained by the authorities referred to by him. Indeed, the very language is used by *Lord Eldon* in *Young* vs. *Keighly*, 16 *Ves.*, 353, and it received the express sanction of *Chancellor Kent*, in *Livingston* vs. *Hubbs et al*, 3 *Johns. Ch. Rep.*, 124. The rule, indeed, is so perfectly reasonable, that authority can hardly be necessary to sustain it. There must be an end of litigation, and this would never be the case if parties were permitted to confess judgments or decrees, and then have them reopened to contest facts in their knowledge at the time, or the knowledge of which, with reasonable diligence, they might have acquired.

My opinion, therefore, is, that no ground has been shown for opening or disturbing, to any extent, the decree of 1841, and I shall, therefore, dissolve the injunction, and give the defendant, Fenby, the liberty to proceed upon his decree for the sum which appears, by his answer and exhibit filed with it, to be due. Other grounds were taken in the argument upon which I do not purpose expressing an opinion.

ALEXANDER and DULANY, for Complainant.
SPEED and GLENN, for Defendants.