## Case No. 13,299.

### STANTON v. WILKESON.

[8 Ben. 357; 2 Nat. Bank Cas. (Browne) 162; 2 N. Y. Wkly. Dig. 91.] [1]

District Court, S. D. New York. Feb., 1876.

NATIONAL BANK—RECEIVER—ASSESSMENT TO PAY DEBTS—OFFICER OF THE UNITED STATES—STATE LAWS AS RULES OF DECISION—DEBTS AND LIABILITIES—CONSTRUCTION OF STATUTE.

1. Section 721 of the Revised Statutes of the United States makes state laws applicable as rules of decision in trials at common law, in the federal courts, only where it is not otherwise provided by federal enactment.

2. The right of a receiver of a national bank to bring a suit in his own name to recover an

assessment laid on stockholders, for the purpose of paying debts, grows out of the provisions of section 5234 of the Revised Statutes; and, therefore, sections 111 and 123 of the New York Code of Procedure do not apply to the case, as rules of decision. But if they did, such an action would be properly brought by the receiver in his own name.

[Cited in Price v. Abbott, 17 Fed. 508; Young v. Wempe, 46 Fed. 355; Fisher v. Yoder, 53 Fed. 565.]

3. A receiver of a national bank is an officer of the United States.

[Cited in Frelinghuysen v. Baldwin, 12 Fed. 397; Price v. Abbott, 17 Fed. 508; Hendee v. Connecticut & P. R. Co., 26 Fed. 678; Stephens v. Bernays, 41 Fed. 402; Fisher v. Yoder, 53 Fed. 565.]

4. A receiver of a national bank is not compelled to proceed by bill in equity against all the stockholders, to collect an assessment which the comptroller of the currency has directed to be levied upon them, but may proceed by separate actions at law, against the separate stockholders, to recover the amount due from each.

[Cited in Stephens v. Bernays, 41 Fed. 402; Young v. Wempe, 46 Fed. 355.]

5. The word "debts," in section 5234 of the Revised Statutes, includes the "contracts, debts and engagements" mentioned in section 5151, and the word "liabilities" imports no broader obligation.

[This is a suit to recover an assessment, by Edwin L. Stanton, receiver of the First National Bank of Washington, D. C., against Catherine C. Wilkeson. Heard on demurrer.]

Man & Parsons, for plaintiff.

George Gray and Henry Stanton, for respondent.

BLATCHFORD, District Judge. The plaintiff is the receiver of a national bank, which was organized under the act of February 25, 1863 (12 Stat. 665). The defendant, at the time the bank suspended, was the holder of 100 shares of its capital stock, of the par value of $10,000. This suit is brought to recover an assessment of 60 per cent., or $6,000, thereon. The complaint is demurred to.

The first ground of demurrer is, that the plaintiff has no capacity to sue. It is contended that, as section 721 of the Revised Statutes provides that "the laws of the several states, except where the constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision, in trials at common law, in the courts of the United States, in cases where they apply," the Code of Procedure of New York forbids the bringing of this suit by the plaintiff. The sections of the Code which are referred to are section 111, which provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 113; and section 113, which provides that a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted. The plaintiff was appointed receiver by the comptroller of the currency on the 19th of September, 1873, under the provisions of sec-

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 2 N. Y. Wkly. Dig. 91, contains only a partial report.]

tion 50 of the act of June 3, 1864 (13 Stat. 114). It is contended that the receiver is not the real party in interest, and is not a trustee of an express trust, and is not expressly authorized by the statute to sue. The 50th section of the act of 1864 (now section 5234 of the Revised Statutes), provides that the receiver shall take possession of all the assets of the bank and collect all debts, dues and claims belonging to it, and may sell all the property of the bank, and may, if necessary to pay the debts of the bank, "enforce the individual liability of the stockholders." The receiver is required to "pay over all money so made to the treasurer of the United States," subject to the order of the comptroller, and to make report to the comptroller of all his acts and proceedings. It is quite plain, from these provisions, that the receiver and he alone is authorized to sue, either in his own name or in the name of the bank for his use, to collect the assets of the bank and to enforce the individual liability of the stockholders. No such authority is given to the comptroller. No money can be made by any collection of assets, or by any enforcement of the individual liability of stockholders, unless it is made by the receiver, and the statute contemplates that he shall make it and does not contemplate that any one else shall make it. No one else is required to pay over to the treasurer any money so made, and no provision is made for the paying over to the receiver, by any other person, of any money so made. Hence it follows, that the money which the receiver is to pay over, so far as it is made by collections by suit and enforcement by suit of the individual liability of stockholders, can come into the receiver's hands only through suits brought by himself in his own name or in the name of the association for his use. He is, therefore, authorized to sue in his own name. His right to sue to collect debts due to the bank, and his right to sue to enforce the individual liability of stockholders, rest upon the same provisions of law, and both of those rights have been sustained by abundant judicial authority. Kennedy v. Gibson, 8 Wall. [75 U. S.] 498; Bank of Bethel v. Pahquioque Bank, 14 Wall. [81 U. S.] 383, 401; Bank v. Kennedy, 17 Wall. [84 U. S.] 19.

I do not intend to intimate that the law of the state applies to this case, in respect to the capacity of the plaintiff to sue, because section 721 of the Revised Statutes makes the state laws applicable as rules of decision, in trials at common law, in the federal courts, only where it is not otherwise provided by federal enactment. In the present case, the power of the plaintiff to sue is conferred by, and grows out of, the provisions of section 5234 of the Revised Statutes.

It is also objected that this court has no jurisdiction of this suit. It is provided, by section 563 of the Revised Statutes, that the district courts shall have jurisdiction "of all suits at common law brought by the United States, or by any officer thereof, authorized by law to sue." This is a suit at common law, as distinguished from a suit in equity, and the receiver is, as we have seen, authorized by law to sue. The remaining question is, whether the receiver is an officer of the United States.

It has been held by the supreme court, in U. S. v. Hartwell, 6 Wall. [73 U. S.] 385, that a clerk appointed by an assistant treasurer of the United States, pursuant to a statute authorizing such appointment, with a prescribed salary, and whose tenure of place would not be affected by the vacation of office by the assistant treasurer, and whose duties, although such as his superior should prescribe, were continuing and permanent, is an officer within the meaning of the subtreasury act, and subject to the penalties prescribed by it for the misconduct of officers. He was appointed by the assistant treasurer with the approbation of the secretary of the treasury, under a statute which authorized the appointment of clerks in such manner. The court say, in that case, that the clerk was a public officer; that an office is a public station or employment, conferred by the appointment of government; and that the term embraces the ideas of tenure, duration, employment and duties. A receiver of a national bank is in the public service of the United States. He is appointed pursuant to law. Vacation of office by the comptroller does not vacate the receivership. His duties are continuing and permanent. The secretary of the treasury is declared by section 233 of the Revised Statutes to be the head of the department of the treasury. By section 324 the comptroller of the currency is made the chief officer of a bureau in the department of the treasury, charged with the execution of all laws passed by congress relating to the issue and regulation of a national currency secured by United States bonds, and it is enacted that he shall perform his duties under the general direction of the secretary of the treasury. Receivers of national banks are authorized to be appointed by sections 5141, 5191, 5195, 5201, 5205, and 5234, under the circumstances prescribed in those several sections, which correspond to sections 15, 31, 32, 35 and 50 of the act of 1864, and section 1 of the act of March 3, 1873 (17 Stat. 603). In only one of these sections is it enacted that the appointment of the receiver shall be made by the comptroller with the concurrence of the secretary of the treasury. But this is implied; and, where the comptroller appoints a receiver, the concurrence or approval or approbation of the secretary of the treasury is to be presumed, till the contrary appears, for the comptroller is required to perform his duties under the general direction of the secretary of the treasury. See Cadle v. Baker, 20 Wall. [87 U. S.] 650. In U. S. v. Hartwell, it was held that the appointment of

the assistant treasure's clerk by that officer, with the approbation of the secretary of the treasury, constituted an appointment by the head of a department, within the meaning of the provision of the constitution (article 2, § 2), that congress may by law vest the appointment of such inferior officers as they think proper in the heads of departments. This point has been decided in the same way by the district judge for the Eastern district of New York, in Platt v. Beach [Case No. 11,215], and I entirely concur in his views.

It is further objected, that the proper remedy of the plaintiff is not by separate suits at law against individual stockholders, but by a suit in equity. The view urged is, that, if the 60 per cent. assessed in this case shall turn out, if it be all collected, to be more than is necessary, there is no provision of law for refunding it; and that, if there are insolvent stockholders who cannot pay the 60 per cent., another assessment may be sought to be made on stockholders who can pay, and thus they be compelled, perhaps, to pay more than their proper proportion of the debts.

The individual liability sought to be enforced in this suit, is that imposed by section 12 of the act of 1864, now section 5151 of the Revised Statutes, as well as that imposed by the act of 1863, under which the bank in question was organized. The liability imposed by section 12 of the act of 1863 was in these words: "For all debts contracted by such association for circulation, deposits or otherwise, each shareholder shall be liable to the amount, at their par value, of the shares held by him, in addition to the amount invested in such shares." The act of 1864 and the Revised Statutes enact that the shareholders "shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." The provisions of the acts of 1863 and 1864 in this respect do not differ in substance. The stockholder is to be individually liable, to the extent of the amount of his stock, at its par value, in addition to amount of the stock. The limit in amount or extent is the par value of his stock. Within this limit each stockholder is to be liable equally and ratably; that is, no one is to be assessed a larger percentage than any other one on the par value of his stock, and, when one is assessed a given percentage, every other one shall be assessed a like percentage. Each is to be liable in respect only of his own stock, and because he is a stockholder, and up to the full par value of his stock; but he is not to be liable in respect of the stock of any other stockholder, or because any other person is a stockholder, or beyond the full par value of his stock. This is a several liability. The stockholders

are not jointly liable. There is no contribution among them provided for, whereby one of them has any right to call any other one directly to account, in contribution, in respect of any sum paid in discharge of the statutory liability. The proceedings are not taken by first ascertaining how much is necessary to be collected, and then apportioning that amount among the stockholders, and then collecting, by suit or otherwise, the sum so apportioned. The comptroller is to make an assessment, by determining how much each stockholder must be liable for, in a percentage on the par value of his stock. These views of the statute are those determined by the supreme court in Kennedy v. Gibson, 8 Wall. [75 U. S.] 498, which case is approved in Sanger v. Upton, 91 U. S. 56. There is nothing in the case of Pollard v. Bailey, 20 Wall. [87 U. S.] 520, that is in conflict with these views. That was an action at law by a creditor against a stockholder in a state bank, to recover the amount of the creditor's debt, under a statute which declared that individual stockholders in the bank should be "bound respectively for all the debts of the bank, in proportion to their stock holden therein." In delivering the opinion of the court in that case, Chief Justice Waite points out, that, by the provisions of the statute in that case, each stockholder is bound for the debts in proportion to his stock; that his liability is not limited to the par value of his stock, and he is not bound absolutely for the payment of the full amount of that; that he must pay a sum which shall bear the same proportion to the whole indebtedness that his stock bears to the whole capital, and is not required to pay more; that no stockholder is liable for more than his proportion of the debts; that such proportion can be ascertained only upon an account of the debts and stock, and a pro rata distribution of the indebtedness among the several stockholders; that the proper action in such case is one in equity, to state an account and make distribution; and that the case is different from one where the statute provides generally that all stockholders shall be individually liable for the payment of the debts. The latter is the liability prescribed by the statutes in relation to national banks, the liability being limited, however, to the par value of the stock. The court manifestly did not intend that the decision in Pollard v. Bailey, should apply to the liability of stockholders in national banks.

The suggestion that, where there is an enforced contribution of too much, from stockholders, there is no provision for refunding it, is not a sound one. In addition to the fact that, in such a case, the stockholders would have a right to enforce the refunding by suit, the provision of section 50 of the act of 1864, now section 5236 of the Revised Statutes, is not open to the criticism made upon it, that it only directs that the surplus of the proceeds of the assets of the bank

shall be paid to the stockholders, and does not provide for the payment back to them of surplus money collected in enforcement of their individual liability. If it were necessary, the money collected from stockholders might fairly be considered as the proceeds of assets of the bank, for the purposes of the statute; but, at all events, as the statute provides that the money to be made by enforcing the liability of stockholders is to be paid to the treasurer, subject to the order of the comptroller, and that the comptroller is to make dividends of such money and other money, and that the remainder of the proceeds, after paying the debts, shall be paid to the shareholders, it is entirely clear that such proceeds include surplus money collected from stockholders.

It is not necessary now to anticipate or decide any question in regard to a second assessment. No considerations growing out of the same properly affect any question arising on this demurrer.

The cases of Kennedy v. Gibson and Sanger v. Upton decide that the comptroller is vested with authority to determine the extent to which the individual liability of stockholders is to be enforced. This decision was followed by the district court for the Eastern district of New York, in Strong v. Southworth [Case No. 13,545].

The complaint alleges, that the assets of the bank are insufficient to pay "its debts and liabilities," and that, in order to provide for paying the same, it is necessary to enforce the personal liability of the stockholders; and that the comptroller has determined that such assets are insufficient to pay such "debts and liabilities," and that it is necessary, in order to pay "the same," to enforce to the extent named in the complaint the individual liability of the stockholders. The criticism is made, that the liability imposed by the statute is for all "contracts, debts and engagements" of the bank, and that the statute (section 5234) provides that such individual liability may be enforced only where is it "necessary to pay the debts" of the bank, and not for the purpose of paying "liabilities of the bank." It is a sufficient answer to this criticism to say, that the complaint, after the foregoing averments, goes on to set out in hæc verba the determination or assessment made by the comptroller, and that, in that, it is stated that he determines that the assessment is necessary to pay the duly proven debts of the bank. Moreover, there could have been no intention, by the language of section 5234, "to pay the debts," to narrow the individual liability imposed by section 5151, which is for all "contracts, debts and engagements," and the word "liabilities" imports no broader meaning that the word "debts" in section 5234, when the word "debts" in that section must necessarily be held to include the "contracts, debts and engagements" mentioned in section 5151.

The demurrer is overruled, with costs, with leave to the defendant to answer in 20 days, on payment of costs.