## ANNE M. HOLLOWAY

### *vs.*

## SAFE DEPOSIT & TRUST COMPANY OF BALTI-MORE, Trustee.

## JOHN E. HOLLOWAY

### *vs.*

## SAME.

*Equity : pleading and practice. Bills of review : errors in law ;*
*time for filing. Agreements : mistake ;*
*power of revocation.*

In general, a bill of review will lie to review proceedings in equity and set the decree aside, when it appears upon their face that they contain errors at law.                    pp. 625-626

The time for the filing of such a bill is generally restricted to the time in which appeals may be taken.                    p. 626

In general, such a bill of review may be filed only within nine months from the time of the filing of the decree which it seeks to have reviewed.                    p. 626

The time for filing bills of review is not restricted to two months, the time limit for the taking of appeals under the new Equity Rules.                    p. 626

The mere statement of a party that he did not know the legal effect of a decree, passed upon his instance, is not such an allegation as will justify the setting aside of the decree.    p. 627

That a party thought an agreement upon which a decree was based could be revoked at his pleasure, and that he did not learn of his error until two years thereafter, it is not sufficient grounds for setting aside the decree.                    p. 627

*Decided February 12th, 1914.*

Two cross-appeals in one record from a decree of the Circuit Court No. 2 of Baltimore City.   (GORTER, J.)

The facts are stated in the opinion of the Court.

The two causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John B. Deming,* for Anne M. Holloway, appellant.

*E. Allan Sauerwein, Jr.,* for John E. Holloway, appellant.

*George Whitelock,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

John Q. A. Holloway died, seized of a large estate, leaving surviving him a widow, three sons and one daughter.  By his last will he created what is commonly called a spendthrift trust, for the benefit of his son, John E. Holloway, and named the Safe Deposit and Trust Company of Baltimore trustee thereof.  By the terms of the will the trustee was to hold the estate in trust for the son for his life, and thereafter for the benefit of the descendants of the son, but in default whereof, at his death, the principal was to pass to, or be held in trust for, other children of the testator surviving, subject to the retention by the trustee of $100,000.00 thereof, for the benefit for the life, or widowhood, of any widow of the said John E. Holloway.  The fund was to be augmented at the death of the widow of the testator, and to further augmentation, contingent upon the death, without issue, of other children of the testator, during the lifetime of the said John E. Holloway. It was declared, in said will, to be the desire of the testator that the trusts created should be administered under the supervision of a Court of Equity.  Accordingly, upon petition for that purpose, Circuit Court No. 2 of Baltimore City assumed jurisdiction over the administration of said trusts.

Later Anne M. Holloway filed in the cause a petition, setting forth that she was the wife of the said John E. Holloway, but, because of certain differences between them, they had entered into a formal agreement of separation, wherein it was provided that the trustee should pay to the petitioner, out of the trust income of her husband under said will, the sum of two hundred and seventy-five dollars monthly, until the death of the widow of the said testator, and from and after the death of said widow, during the joint lives of the petitioner and John E. Holloway, one-half of the whole net income accruing from the entire trust fund, which might then be held by the trustee in trust for John E. Holloway. The petitioner called the Court's attention to the spendthrift clause of the will, and prayed that the trustee might be required to disburse the trust income in conformity with the said agreement. John E. Holloway filed an answer to this petition, through a solicitor, consenting to the passage of such decree as might be right and proper, and united in the prayer of the petition. There was filed with the answer a letter from John E. Holloway to his solicitor, authorizing him to appear for him, of which the following is a material part:

"It may, by reason of the especial provisions of my father's will or otherwise, be necessary to have this agreement confirmed by decree of court, so that the separate allowance which I am seeking to secure my wife by this agreement between us may be decided judicially to be a reasonable alimony to her payable out of my revenue.

"I desire you to represent me professionally in the premises, and I request and direct you to appear in my behalf to any proceeding which may be taken by either my wife or the trustee, looking to the confirmation by the court of the terms of the agreement of this date, or the obtaining of a decree in her favor for the allowance of proper alimony to her; and I further request and instruct you to take all such steps in my

behalf as may, in your opinion, be expedient or neces-
sary for the full effectuation of my intention and the
allowance of proper alimony to her."

The trustee also filed an answer, and in it especially called
the attention of the Court to the spendthrift clause of the
will, by setting it out in full; and in these words concluded:
"The trustee now leaves, however, absolutely to the Court the
true interpretation of said will and the determination of the
validity of said agreement to affect the trust income, and sub-
mits to the passage of such decree as may to the Court seem
right and proper."

The Court on the 29th day of May, 1911, passed a decree,
ratifying and confirming the agreement "in accordance with
the prayer of the petition and the answer thereto of said John
E. Holloway," and directing the trustee to pay to the peti-
tioner the portions of the income according to the terms of
the agreement.

On the 2nd day of June, 1913, John E. Holloway filed in
the cause a bill of review, seeking to have annulled and set
aside the decree of May 29th, 1911, and afterwards, on the
21st day of July, 1913, by leave of Court, filed an amended
bill for the same purpose.

The bill, which is a lengthy one, substantially alleges the
aforegoing facts, and, in addition, alleges that the agreement
of separation was prepared by and at the suggestion of George
Whitelock, Esq., a member of the Maryland Bar, while on a
visit to his wife at Biarritz, France, and that the latter,
authorizing his solicitor to appear for him, was also prepared
by the said George Whitelock; that while the execution of the
said agreement, and the selection of a solicitor to represent
him, were the unconstrained acts of the complainant, he did
not have the benefit of independent legal advice. The seven-
teenth paragraph of the bill is as follows:

"And your complainant herein does further aver
that, although he knew the text of the provisions of

the said last will and testament of his said father,
he was not aware, until the third day of April, 1913,
that the making of the said agreement and the consent-
ing to the entering of the said decree, was in viola-
tion of the terms thereof, nor that the decretal order
of the said Court when so passed did not divest him
of his right to revoke such direction to the said trustee,
and to demand and receive of the said trustee all pay-
ments thereafter accruing to him under the terms of
said will, the said decretal order of the court to the
contrary notwithstanding."

And further charges that the Court was without power or
authority to pass the decree, and that the same is void, and
prays that the proceedings may be reviewed and the decree
annulled.

After the Court had overruled a demurrer to the bill filed
by Anne M. Holloway, the trustee and Anne M. Holloway
filed separate answers. The trustee answered that it had
paid certain amounts to Anne M. Holloway in pursuance of
the decree of May 29th, 1911, until served with the *nisi*
order of Court of June 2nd, 1913, suspending payments until
the further order of Court. Answering the 17th paragraph
of the bill, set out above, the trustee said it had no knowledge
of the facts therein contained, further than disclosed by the
proceedings, except it had received from John E. Holloway
under date of February 7th, 1911, the following letter:

"Under the terms of the trust, is it possible to pay
to my wife, Anne M. Holloway, any part of my in-
come? The same to be sent direct to her by the Safe
Deposit and Trust Company. If such an arrangement
is possible, I wish you to pay to her four thousand
dollars per annum, and the balance of the income, of
course, to be paid to me. I want to make some ar-
rangement for Mrs. Holloway as I expect shortly to
leave Biarritz for some time and want to be sure that
she will be in funds during my absence."

To which it replied by letter of February 23rd, 1911, saying:

> "Under the terms of your father's will, it was directed as follows: 'All payments to be made by the trustee under this will to any *cestui que trust,* whether of principal or of income, shall be paid into the hands of the *cestui que trust* himself or herself, as the case may be, and not into the hands of another, whether claiming by the authority of such *cestui que trust* or otherwise.' And hence the income must be paid to you and we could not, under a direction, pay it to Mrs. Holloway."

The answer of Anne M. Holloway expressly pleads laches, as a bar to the granting of the relief prayed by way of bill of review.

The Court, upon the bill and answer, passed a decree setting aside the decree of May 9th, 1911, as of the 2nd day of June, 1913, the date of the *nisi* order suspending payments, and ordered the trustee to pay unto John E. Holloway, alone, the entire income accruing under the will of John Q. A. Holloway, and further ordered that the trustee be allowed credit for all payments made in pursuance to the decree of May 29th, 1911.

From this decree Anne M. Holloway entered an appeal and John E. Holloway a cross-appeal.

Should the Court have entertained this bill of review, after the lapse of time between the date of that decree and the filing of this bill, is the only question, of those presented, that we deem it necessary to consider to arrive at a proper determination of this case.

The theory upon which the complainant asks to have the proceedings reviewed and the decree set aside is, that there are errors of law apparent upon their face, in that the Court was without power to pass such a decree in dealing with a spendthrift trust. That a bill of review will lie for such purpose is not open to question. *Miller's Equity,* sec. 293, and

numerous cases cited in the notes. Having that right he
seeks by his bill filed the 2nd day of June, 1913, to set aside
a decree passed the 29th day of May, 1911, with his consent.

In the case of *Presstman* v. *Mason,* 68 Md. 78, this Court,
in dealing with the time within which a bill of review must
be filed, said: "These appellees have failed to file their bill
of review within the time which practice in this State has
thoroughly established as necessary. Both in England and
in this country the filing of bills of review is ordinarily re-
stricted to a period within which an appeal may be taken.
2 *Daniell's Ch. Pr.* 1580, 1581 and note; *Alex. Ch. Pr.*
179; *Berrett* v. *Oliver,* 7 G. & J. 207; *Hitch* v. *Fenby,* 4
Md. Ch. 190, and *Same Case,* 6 Md. 218. "The Maryland
authorities just cited fix the period after which bills of re-
view ordinarily can not be filed, at nine months, which was
the period within which appeals in equity could be prose-
cuted before the adoption of the new equity rules which have
shortened the time for appeal; and as this Court under con-
stitutional authority have made a rule for the expediting
of business, requiring all appeals to be taken within sixty
days, we are not hereby to be understood as deciding that
hereafter bills of review must be filed within that period
instead of nine months as heretofore practiced."

In *Miller's Equity,* sec. 299, the rule is thus stated: "The
filing of a bill of review for error of law is ordinarily re-
stricted to the period limited for taking an appeal from the
decree sought to be reviewed. Until recently an appeal
might be taken at any time within nine months from the
date of the decree, but now they must be taken within two
months; but it is not to be understood that a bill of review
may now be filed within that period only, instead of within
nine months as heretofore practiced. It has been held that
to authorize a bill of review for newly discovered facts, it
must appear that the facts came to the knowledge of the
party within nine months prior to the filing of the bill, by
analogy to the period limited for appeals under the old prac-

tice.  The limitation of time as to appeals from decrees of the Court applies to the filing of bills of review."

Is there then anything peculiar to this case that would not render the above authorities applicable?  The 17th paragraph of the bill, which we have quoted in full, was apparently introduced to explain why the bill had not been filed before, to explain away the delay.  By it he says he was not cognizant, until just prior to the date of filing the bill, that the agreement and the decree were in violation of the terms of his father's will and further that he thought he could revoke the decree at his pleasure.  We think both the letter to his solicitor, which he admits signing, and which it is to be presumed he knew the contents of, and the answer of the trustee setting forth the correspondence upon this very question, quite do away with the first of his contentions.  That he thought he could revoke the provisions at pleasure, and only discovered this to be error after lapse of nearly two years, is not such a discovery of facts as to entitle one to an extension of time within which such a bill must be filed.  *Whelan* v. *Cook,* 29 Md. 7; *Lanahan* v. *Lanahan,* 110 Md. 177.  Indeed it is not a matter of fact at all, but a legal condition about which he should have acquainted himself prior to consenting to the passage of the decree.  If his consent had been procured by misrepresentation, as to what would be the effect of such a decree, probably a different result would follow, but there is no pretense of such a charge.  It would never do, on a mere statement of a party that he did not know the legal effect of a decree passed upon his solicitation, to allow that decree to be set aside after it had been unquestioned for the length of time this decree had.

In our opinion, therefore, the lower Court should have dismissed the amended bill of John E. Holloway filed July 21st, 1913.  The effect will accordingly be to leave standing in full force and effect the order of May 29th, 1911.

> *Decree reversed and amended bill dismissed, costs to be paid by the said John E. Holloway.*