EXECUTORS OF NELSON H. FOOKS *v.* JOHN J. GHINGHER, Receiver.
[No. 33, April Term, 1937.]

614

*Decided June 16th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, and MITCHELL, JJ.

*Herbert C. Fooks,* for the appellants.

*John S. Newman* and *Parsons Newman,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Central Trust Company of Maryland, at the close of business on September 2nd, 1931, placed its affairs and assets in the hands of George W. Page, Bank Commissioner of Maryland, as receiver for final liquidation.

As the result of a proceeding initiated by him in the Circuit Court for Federick County, in equity, that court assumed jurisdiction of the property and business of the company, and continued Page as receiver. On October 24th, 1932, the same court ordered the receiver to collect from the stockholders of the trust company an amount of money equivalent to the par value of the stock which they respectively held in it. Later Page resigned as receiver, and John J. Ghingher, who succeeded him as Bank Commissioner, was appointed in his place. On June 20th, 1933, Ghingher filed in the same court his bill of complaint against Nelson H. Fooks and seventy-two others, stockholders of the Central Trust Company, in which he prayed that the defendants be required to pay to him the sums due and payable respectively by them on account of such assessments. Or, stated more briefly, he brought the suit to enforce the double liability imposed by Code, art. 11, sec. 72, on the defendant stock-holders to the full amount of the par value of the stock respectively held by them.

Nelson H. Fooks appeared and answered, the case was heard, and on February 24th, 1934, the court decreed that he pay to the receiver $1,750, which was the full par value of the stock of the Central Trust Company, standing in his name on its books.

In *Allender v. Ghingher*, 170 Md. 156, 158, 183 A. 610, the court considered the appeals of two groups of stock-holders of the Central Trust Company, who had been made defendants in a suit brought against each group for the same purpose. The facts of those cases were in all respects identical with the facts involved in this, which is against a third group of the stockholders of that company. In those cases the defendants demurred to the respective bills on the ground that the complainant had a full, adequate, and complete remedy at law, and that, consequently, a court of equity was without jurisdiction to grant the relief prayed. The trial court rejected that contention, sustained the right of the receiver to maintain the suits, and overruled the demurrers, but on appeal

its orders were reversed, and it was decided that the trial court was without jurisdiction, because, as stated by Judge Johnson for this court, "The liability of the stockholders is several and not joint; and where the assessment is for less than the full amount of such liability the suit may be either at law or in equity, but when the order or assessment is for the full amount of the par value of the stock, the suit against the stockholders must be at law, unless there are special facts existing requiring the interposition of a court of equity. *Kennedy v. Gibson* (Md. 1869) 8 Wall. 498, 19 L. Ed. 476; *Bundy v. Cocke* (Ky. 1888) 128 U. S. 185, 9 S. Ct. 242, 32 L. Ed. 396; *Stanton v. Wilkeson* (D. C. N. Y. 1876) 8 Ben. 357, 22 Fed. Cas. page 1074, No. 13299; *Young v. Wempe* (C. C. Cal. 1891) 46 Fed. 354; *Bailey v. Tillinghast* (Ohio 1900) 99 Fed. 801, 40 C. C. A. 93, affirming (C.C. 1897) 86 Fed. 46; *Parker v. Robinson* (Mass. 1895) 71 Fed. 256, 18 C. C. A. 36; *Casey v. Galli* (1876) 94 U. S. 673, 24 L. Ed. 168; *Zimmerman v. Carpenter* (C. C. S. D. 1898) 84 Fed. 747; *Rankin v. Miller* (D. C. Del. 1913) 207 Fed. 602; *Bailey v. Sawyer* (C. C. Minn. 1877) Fed. Cas. No. 744; *Hale v. Allinson*, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380. See, also, 3 *R. C. L.* 415; 7 *C. J.* 512; *United States v. Knox*, 102 U. S. 422, 26 L. Ed. 216; *Studebaker v. Perry*, 184 U. S. 258, 22 S. Ct. 463, 466, 46 L. Ed. 528." 170 Md. 156, 161, 183 A. 610, 613.

After the passage of the decree in this case, Nelson H. Fooks died, testate, and James R. Phillips, Jr., and Herbert C. Fooks were appointed executors of his estate. There was no appeal from that decree, but on November 23rd, 1936, the executors filed in the case a petition to strike out the decree on the ground that the trial court had no jurisdiction over the subject-matter of the suit, and that its decree was therefore void. The court on January 9th, 1937, dismissed that petition, and from that order this appeal was taken.

The defense interposed by Nelson J. Fooks to the suit against him was that he had been induced to subscribe to the stock of the Central Trust Company, standing

in his name, by false representations of material facts made to him by Emory L. Coblentz, then its president. That issue was decided adversely to him, on the theory that he had waived any right he may have had to object to the subscription on that ground, and the decree of February 24th, 1934, was entered. He did not object to the jurisdiction of the court either prior to the decree, or at any time thereafter, nor was any such objection made until raised by his executors some two years and nine months after the decree was entered.

If he had demurred to the bill of complaint, and had appealed from any adverse decree or order, the bill in this case must have been dismissed, as the bill in *Allender v. Ghingher* was dismissed, on the ground that, since the complainant had a full, adequate, and complete remedy at law, a court of equity had no jurisdiction to grant the relief prayed. He did not demur, nor did he object to the jurisdiction of the court in any way, but submitted to the jurisdiction and to the trial of the case on its merits, and he failed to appeal from the decree, which was adverse to his contentions.

The question presented by this appeal, therefore, is whether the appellants now, long after that decree has become enrolled, and long after the time within which an appeal could have been taken has passed, are entitled to have it rescinded and stricken out on the ground that the court had no jurisdiction to enter it, and it is a nullity.

Assuming, without deciding, that that question may be raised by a petition filed in the case rather than by a bill of review (*Straus v. Rost*, 67 Md. 465, 10 A. 74; *Thurston v. Devecmon*, 30 Md. 210, 216; *Mallery v. Quinn*, 88 Md. 38, 43, 40 A. 1079; 10 R. C. L. 573), it is quite certain that the position of the petitioner is no stronger than it would have been had he raised it by a bill of review. A bill of review must ordinarily be filed within the time limited for taking an appeal (10 R. C. L. 572; *Watkinson v. Watkinson*, 68 N. J. Eq. 632, 60 A. 931; 69 L. R. A. 397, 6 Ann. Cas. 326, and note; 20 *Am. Dec.*

163, note; *Beach Mod. Eq. Pr.* secs. 852, 864; *Miller's Equity Proc.,* sec. 299; *Hirons v. Hubbell,* 153 Md. 697, 142 A. 380), and in any case the petitioner, or the complainant in a bill of review, must act with reasonable diligence. In the case of nonresidents of full age, the time for filing such a bill is limited to twelve months from the date of the decree (Code, art. 16, sec. 133), and in *Presstman v. Mason,* 68 Md. 78, 91, 11 A. 764, 766, the court said: "But besides all this, these appellees have failed to file their bill of review within the time which practice in this state has thoroughly established as necessary. Both in England and in this country the filing of bills of review is ordinarily restricted to a period within which an appeal may be taken. 2 *Daniell, Ch. Pr.* 1580, 1581, and note; *Alexander Ch. Pr.* 179; *Berrett v. Oliver,* 7 G. & J. 191, 207; *Hitch v. Fenby,* 4 Md. Ch. 190; *Id.,* 6 Md. 218. The Maryland authorities just cited fix the period after which bills of review ordinarily cannot be filed at nine months, which was the period within which appeals in equity could be prosecuted before the adoption of the new equity rules, which have shortened the time for appeal; and as this court, under constitutional authority, has made a rule for the expediting of business, requiring all appeals to be taken within sixty days, we are not hereby to be understood as deciding that hereafter bills of review must be filed within that period, instead of nine months as heretofore practiced. Parties are required to use reasonable diligence; and as respects the ignorance alleged, the question is not what a party actually did know, but what, by using due diligence, he might have known. *Hitch v. Fenby,* 4 Md. Ch. 190." In this case the petition was filed two years and nine months after the decree which they now attack had been entered. So long a delay is, under the most liberal rule recognized by what may be called the common law of equity practice, or by the settled practice of this state, a complete bar to the relief sought by the petitioners, unless the decree was a nullity.

So that the decisive question is, Was the decree of the

Circuit Court for Frederick County, in equity, filed on February 24th, 1934, a nullity? If the decree is utterly void it may be attacked anywhere, at any time, by any person affected by it, for, while a merely voidable judgment or decree may only be vacated by an attack made in proper form and within a reasonable time, 34 *C. J.* 511. "A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government can invest it with any of the elements of power or of vitality. * * * Such a judgment has been characterized as a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant." *Freeman on Judgments,* sec. 322. See, also, 34 *C. J.,* 509, 514, 515. The judgment or decree of a court which had no jurisdiction to enter it is void (*Dorsey's Lessee v. Garey,* 30 Md. 489; *Cockey v. Cole,* 28 Md. 276; *Baltimore v. Porter,* 18 Md. 284; *Clark v. Bryan,* 16 Md. 171, 174; 34 *C. J.* 528) and in *Bolgiano v. Cooke,* 19 Md. 375, 394, it was said: " 'The true test of jurisdiction is, whether a demurrer will lie to a bill.' * * * The allegations being sufficient to give jurisdiction, no demurrer to the petition for that cause could have been sustained. 'If this be so, neither the erroneous action of the Court, after filing the petition, nor defec-

tive proof, could affect the question of jurisdiction.' *Tomlinson v. McKaig*, 5 Gill, 276." See *Lee v. Carrollton Sav. Assn.*, 58 Md. 301, 304; *Dunn v. Wilmer*, 131 Md. 494, 500, 102 A. 763.

In *Freeman on Judgments*, sec. 325, the author notes that in many cases, in which the courts have had occasion to consider whether decrees were void or voidable, little effort has been made to discover or define the "invalidating elements or matters" in particular judgments, and he states that, owing to the variety of facts and circumstances that arise in the course of judicial proceedings, "it is not easy to deduce a principle that would be a test in every case of the void or voidable character of the proceeding." He adds that no specific description of a void decree may be framed which does not conflict with the decisions of many courts. But he says: "Broadly speaking nullity of judgments results from one or more of the following causes: 1. Want of a legally organized court or tribunal; 2. Want of requisite jurisdiction over the subject matter or the parties or both; 3. Want of power to grant the relief contained in the judgment." Another definition is given in 34 *C. J.* 531, where it is said: "The defect of jurisdiction may be either in respect to the person, the subject matter, or the authority to render the particular judgment or decree, a judicial determination outside the issues being without jurisdiction and void."

Jurisdiction of the subject-matter means not simply the particular case to which the attention of the court is directed, but the class of cases to which it belongs, and over which the authority of the court extends. *Freeman on Judgments*, sec. 337. So if a court of equity tried an indictment for some criminal offense, and entered a judgment and sentence against the defendant, its judgment would necessarily be void, and so perhaps it would be if it assumed jurisdiction of a purely tort action, for, as stated in *Freeman on Judgments*, sec. 337 p. 676: "Courts of equity exercise a well defined jurisdiction over certain classes of matters; a jurisdiction

largely inherent in the court although sometimes enlarged or curtailed by statutes. Any attempt by such a court to hear and determine a case not within either its inherent or statutory powers would result in a void decree rendered without jurisdiction of the subject matter, as where it undertakes to adjudicate the issues in a contested election case, a matter entirely outside its powers."

The term "jurisdiction," as used in defining the powers of a court of equity, has a different and narrower meaning than that ordinarily given to it, because of the peculiar nature of those courts, and is used in contradistinction to "jurisdiction" in general, and "common law" jurisdiction in particular. *Pomeroy Equity Jur.* sec. 129, *Hunt v. Hunt,* 72 N. Y. 217, 228-230. In the same work, the author says: "In its most general sense the term 'jurisdiction,' when applied to a court, is the power residing in such court to determine judicially a given action, controversy, or question presented to it for decision. If this power does not exist with reference to any particular case, its determination by the court is an absolute nullity; if it does exist, the determination, however erroneous in fact or in law, is binding upon the parties until reversed or set aside in some proceeding authorized by the practice, and brought for that express purpose. It is plain that the term used in this strict sense may be applied to courts of equity as well as to any other tribunals. With this signification of the word, it would be said that an equity court has no jurisdiction to try the issues arising upon an indictment, and to render judgment in a criminal prosecution; the entire proceeding would be null and void. On the other hand, it is equally plain that this strict meaning is not always given to the term 'equity jurisdiction,' as it is ordinarily used. The proceedings and judgment of a court of chancery or of a court clothed with equity powers are not necessarily null and void because the action is not one which comes within the scope of the 'equity jurisdiction' in the common acceptation of that phrase, or in other words, because the claim is one for which there is a full, adequate,

and complete remedy at law," and he adds: "At the same time, if a court clothed with the equity jurisdiction as thus described should hear and decide, according to equitable methods, a case which did not fall within the scope of the equity jurisprudence, because both the primary right invaded constituting the cause of action and the remedy granted were wholly legal, and belonging properly to the domain of the law courts, such judgment, however erroneous it might be and liable to reversal, would not necessarily be null and void. On the contrary, as will be more fully stated hereafter, the objection that the case does not come within this so-called equity jurisdiction must ordinarily be definitely raised by the defendant at the commencement of the proceedings, or else it will be regarded as waived, and the judgment will not even be erroneous."

When, therefore, it is stated that the true test of the jurisdiction of a court of equity to entertain a complaint is whether a demurrer will lie to the bill (*Miller's Equity Proc.* n. 2, 400, 138; *Tomlinson v. McKaig,* 5 Gill, 256, 276; *Bolgiano v. Cooke,* 19 Md. 375, 394; *Davis v. Helbig,* 27 Md. 452, 465; *Gregory v. Lenning,* 54 Md. 51, 56; *Slingluff v. Stanley,* 66 Md. 220, 225, 7 A. 261; *Hamilton v. Traber,* 78 Md. 26, 29, 27 A. 229; *Barrick v. Horner,* 78 Md. 253, 259, 27 A. 1111; *Johnson v. Hoover,* 75 Md. 486, 492, 23 A. 903), obviously the statement may refer to the court's jurisdiction to try the particular case or to its jurisdiction of the class of cases within which the particular case falls.

The mere fact that a demurrer will lie to the bill in itself proves no more than that the plaintiff has failed to state a case for equitable relief. It proves that the court has not jurisdiction of that particular case, but not necessarily that it has not jurisdiction of the class of cases to which it belonged. That fact can only be ascertained from an examination of the subject-matter of the proceeding, and the law which prescribes the forum in which a proceeding to enforce rights incidental to that kind of subject-matter must be tried. So that, while it may appear

on the face of the proceedings that through lack of appropriate allegations a court had no power to enter a particular decree, nevertheless, if it had jurisdiction of the class of cases to which that in which the decree was entered belonged, its decree would not be void, but voidable.

It is firmly established in this state that a proceeding to enforce an assessment for the full amount of the double liability of a stockholder in an insolvent corporation under Code, art. 11, sec. 72, is at law and not in equity. It is also well settled that a proceeding to collect anything less than the full amount of the liability may be in equity. *Allender v. Ghingher,* 170 Md. 156, 161, 183 A. 610.

The only difference between a proceeding to enforce the double liability of a stockholder in an insolvent corporation, of which a court of equity would have jurisdiction, and a case in which it would not have jurisdiction, is that in the one case the liability is for the par value of the stock or for an amount finally liquidated and fixed by a valid assessment, while in the other it is for less than the par value of the stock and may be increased by other assessments. It is therefore manifest that there is nothing, in the nature of a claim to enforce the double liability of a stockholder in an insolvent corporation for the par value of the stock held by him, to exclude it from the scope of the jurisdiction of an equity court, except that there can be but one suit against the stockholder, whereas, where the claim is for less than the par value of the stock, there can be several suits, because there may be several assessments. The decree in the one case as in the other would be for the specific payment of a sum of money, and the purpose of the one as of the other would be the enforcement of the statutory liability of the stockholders of an insolvent corporation.

It cannot well be said, then, that a claim against such a stockholder for one hundred per cent. of the par value of his stock is wholly foreign to the general jurisdiction of an equity court, since a claim for ninety-nine per cent. of that value is within the proper equity jurisdiction of

such a court. The subject-matter is the same in either case—the enforcement of the stockholders' double liability—but where the assessment is for the full par value of the stock, since there need be but one suit, and that for a liquidated amount, there is no need for resort to a court of equity, since complete relief may be had in a court of law. *Fletcher's Cyc. Corp.* secs. 4219, 4224. There is a wide distinction between the lack of jurisdiction to decide a given case, and the improper or irregular exercise of a power which, while within the general jurisdiction of the court, under its established practice, is not applicable to the facts in respect to which it is exerted. *Tonnele v. Wetmore*, 195 N. Y. 436, 88 N. E. 1068, 1071.

That a suit to enforce the statutory liability of stockholders in an insolvent corporation, for the par value of the stock held by them therein, is not wholly foreign to the jurisdiction of a court of equity is implicit not only with the language of Code, art. 23, sec. 147, but also with the cases dealing with that statute prior to chapter 219, Acts 1910, p. 6. That statute, prior to an amendment excluding trust companies from its scope (chapter 219, Acts 1910), provided that stockholders of trust companies should be individually liable ratably for the debts of the corporation, to the extent of the par value of their stock therein (Acts 1908, ch. 153), in addition to the amount invested in such stock, and that (*Id.* sec. 148) the exclusive remedy for the enforcement of any rights created by that statute should be by a bill in equity in the nature of a creditors bill against such stockholders. The validity of that statute, which was retroactive in operation, was considered in *Miners' Bank v. Snyder*, 100 Md. 57, 59 A. 707, and *Murphy v. Wheatley*, 100 Md. 358, 59 A. 704, and sustained, and in *Miners' Bank v. Snyder*, it was said:

"We are unable to see how any substantial injury is inflicted upon the appellant's contractual rights by insisting upon their enforcement by means of a creditors' bill in a court of equity, which is a tribunal regulated by

principles and furnished with agencies well suited to the complete and fair adjustment of conflicting rights and varied interests, instead of leaving them to the uncertain results of a struggle between competing creditors in the pursuit of separate actions at law.

"The adjustment and enforcement, in any tribunal and under any form of proceedings, of the rights of creditors as against stockholders in a case like this, where certain stockholders are liable to certain creditors and not to others, is a difficult and complex undertaking, but the rights of the creditors in such a case are not materially lessened or impaired by a statute conferring upon courts of equity the exclusive jurisdiction to ascertain and enforce their respective rights against the several stockholders in a single proceeding."

Those cases decided that the right to enforce the double liability of stockholders was of such a nature that the Legislature might validly confer upon courts of equity exclusive jurisdiction of actions brought to enforce it.

Under the Constitution, the entire judicial power of the State is vested in the circuit courts for the counties, certain courts in Baltimore City, orphans' courts, the Court of Appeals, and justices of the peace. Const. art. 4, sec. 1. In the counties the circuit courts are courts of general jurisdiction, *Id.* sec. 19, and, in so far as it does not violate the constitutional guarantee of trial by jury, there is no specific limitation upon the power of the Legislature to fix the jurisdiction respectively of the law and the equity sides of such courts. But, until fixed by some legislative enactment, the limits of the respective jurisdictions of those two sides of the same court are fixed by the ordinary common law distinction between courts of law and courts of chancery. Those limits are in many instances so vague and shadowy that, if the validity of the decree of a circuit court in its capacity as a court of chancery were to depend in every case upon the fact that according to the ordinary practice of the court the power to enter the particular decree was not within its equity jurisdiction, although within its gen-

eral jurisdiction, its judgments and decrees would lack finality and certainty, rights depending upon them must necessary be illusory and uncertain, and litigation endless.

*Ewald v. Ewald,* 167 Md. 594, 596, 175 A. 464, 466, a case bearing some analogy to this on that question, was a suit to annul the marriage of the parties on the ground that a decree of divorce passed twelve years before was invalid for the reason that the court in that case was without jurisdiction. The plaintiff's contention in that case was that the testimony in the divorce case that one of the parties resided in Maryland was false. In deciding that case, Judge Urner for this court said: "The question with which we are concerned in this case is whether the decree of the circuit court dissolving a Maryland marriage for a cause arising in Maryland should be nullified because additional evidence, produced twelve years later, has convinced another chancellor that the decree was erroneous in its determination of the jurisdictional fact of residence. The record fails to present any reason which seems to us adequate for such a review and rescission of the decree thus challenged. It was passed by a court having the power and duty to decide as to the existence of its jurisdiction over the case, and its unappealed decision of that question should not be subject to avoidance under such conditions as those which this case presents."

More in point is the decision in *Creely v. Bay State Brick Co.,* 103 Mass. 514, that an objection to the jurisdiction of a court of equity to grant relief on the ground that the plaintiff had an adequate remedy at law must be raised by timely objection in the trial court. To the same effect is the decision in *Miller v. Rowan,* 251 Ill. 344, 96 N. E. 285, where the court said: "The objection that the remedy sought belongs properly to the domain of the law courts, which furnish a complete and adequate remedy, must ordinarily be raised by the defendant at the commencement of the suit or else it will be regarded as waived, and, if the question is not raised in the proceeding, the decree will not even be erroneous. This was decided in *Parsons v. Millar,* 189 Ill. 107, 59 N. E. 606,

where a bill for the construction of a will was filed, and it was contended in this court that the circuit court had no jurisdiction because no trust was involved. We held that, the jurisdiction in that regard not having been challenged in the circuit court, the question could not be raised in this court." See, also, *Pomeroy Eq. Jur.* sec. 130, *Freeman on Judgments*, secs 322, 357.

For these reasons, and upon the precedents cited, this court is unwilling to say that the Circuit Court for Frederick County was utterly without jurisdiction to enter the decree in this case, but has reached the conclusion that the decree is voidable, rather than void. Assuming that, it follows that, since the appellants' decedent submitted to the jurisdiction of that court, tried the case before it on its merits, and accepted without question its decree, that they are now barred from questioning its validity. That conclusion is not wholly free from doubt, for reasons stated in a dissenting opinion in *Miller v. Rowan, supra.* There is little direct authority on the precise question involved. The statements of the text-writers are usually qualified by the premise that the rule which they announce is "ordinarily" or "usually" held to be as they state it. The analogies look rather the other way. It does appear on the face of the record that the Circuit Court for Frederick County had no jurisdiction to grant the relief prayed. The assessment had been ascertained and fixed by that court in another case at the full par value of the shares. The court in this case, for the reason stated in *Allender v. Ghingher, supra,* had no power to enforce the payment of that assessment. The conclusion that its decree was merely voidable therefore seems inconsistent with the strict application of established principles of jurisprudence, but such direct authority as there is supports it, and it is unavoidable if judicial decrees are to have either finality or certainty.

In that state of the law the court is constrained to the conclusion announced.

The decree from which the appeal was taken will therefore be affirmed.

*Decree affirmed, with costs.*